Edward C. Kukiela
7398 W. River Rim Pl.
Tucson, AZ 85743
eddie@kukiela.io
(520) 328-6502



## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| **Edward C. Kukiela;** | Case No.   CV-20-0527-TUC-EJM |
| Plaintiff, | **Complaint** |
| v. | **1. Benefits Due** [ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B)] |
| **Tenet Employee Benefit Plan; Tenet Benefits Administration Committee;** | **2. Failure to Disclose Offsets** [ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3)] |
| Defendants. | **3. Failure to Timely Provide Plan Documents** [ERISA § 502(a)(1)(A), 29 U.S.C. § 1132(a)(1)(A)] |

### INTRODUCTION

1.      In early 2020, Plaintiff was covered by two health insurance plans, one of which was the Tenet Employee Benefit Plan. Plaintiff incurred prescription expenses that were covered by both plans and a drug copay assistance program. The Tenet plan was supposed to credit those expenses to its deductible and out-of-pocket maximums, without deducting the amounts paid by the other plan or copay assistance program. It did not — or at least, not consistently.

2.      When Plaintiff tried to appeal, he was stonewalled by OptumRx ("Optum"), the plan's prescription claims administrator. Optum would go on to make the astonishing admission *in an email* that it considered Plaintiff's appeals to be "not an appeal" and did not process them as appeals.

1

3.     Nowhere in Tenet's summary plan descriptions (SPDs) are these offsets disclosed, contrary to U.S. Department of Labor (DOL) regulations that require SPDs to "clearly identify[] circumstances which may result in … offset … of benefits." Plaintiff and his family relied on that disclosure.

4.     The Tenet Benefits Administration Committee ("Tenet BAC") says these offsets are supported by the "clear reading" of the plan. The plan's medical claims administrator, Blue Cross Blue Shield of Texas ("BCBS-TX"), reads the plan differently. The same deductible applies to the medical and prescription benefits, but BCBS-TX and Optum each have their own accounting of it. In all but two cases (which were due to another Optum error), BCBS-TX credited the full expenses, without any offset, to its accounting of the deductible.

5.     As a result of the improper offsets, Plaintiff and his family have had to pay approximately $2,200 in healthcare expenses the plan should have paid. Plaintiff brings this action under the Employee Retirement Income Security Act of 1974 (ERISA) for redress, and also brings a claim against the Tenet BAC for its failure to timely provide plan documents he requested.

**PARTIES**

6.     Plaintiff is an individual who resides in Tucson, Arizona.

7.     Since sometime in 2019, Plaintiff's mother has been an employee of Tenet Healthcare Corporation ("Tenet") or an affiliate or subsidiary.

8.     Defendant Tenet Employee Benefit Plan is an "employee welfare benefit plan" within the meaning of ERISA § 3(1), 29 U.S.C. § 1002(1), sponsored by Tenet. The plan's current plan document and SPD have been effective since January 1, 2020 and are attached as Exs. A and B, respectively. Section 1.5 of the plan document (Ex. A) incorporates the SPD by reference into the plan terms.

9.    The plan provides medical and prescription drug coverage through its Medical Benefit Program and Prescription Drug Program, respectively. To the extent the plan provides such coverage, it is a "group health plan" within the meaning of ERISA § 607(1), 29 U.S.C. § 1167(1) and 29 CFR § 2590.732(a)(1).

10.    Since January 1, 2020, Plaintiff's mother has been enrolled in the "Silver" plan of the Medical Benefit Program, and Plaintiff has been enrolled as one of her dependents. Plaintiff is thus a "beneficiary" within the meaning of ERISA § 3(8), 29 U.S.C. § 1002(8).

11.    Defendant Tenet BAC is designated by Section 13.1 of the plan document (Ex. A) as the plan's "administrator" within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A).

12.    Since at least January 1, 2020, BCBS-TX has been the claims administrator for Plaintiff and his family's Medical Benefit Program coverage.

13.    Since January 1, 2020, Optum has been the claims administrator for the Prescription Drug Program. (Ex. B at 72.)

## JURISDICTION AND VENUE

14.    This court has federal question jurisdiction under ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1), which provides that civil actions under that subchapter (such as this action) may be brought in federal district court.

15.    Venue is proper in this district under ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because Plaintiff obtained the benefits at issue through his mother's employment in this district, such that the plan may be found in this district, and Plaintiff and his mother resided in this district at the time of all occurrences described in this complaint, such that the violations of the plan and ERISA took place in this district.

## FACTS

**Optum Offsets Plaintiff's Benefits**

16.     In January and February 2020, Plaintiff submitted the following Optum claims for Prescription Drug Program benefits (the "COB Claims") for covered prescription drug expenses incurred in 2020:

- 200285284272000
- 200314883808022
- 200555404472041
- 200285198882000
- 200365586312045
- 200235531465017
- 200525221215014

17.     Optum approved the claims.

18.     The plan made no payment on the claims.

19.     Under the Silver plan, there is a $2,800/family annual deductible for expenses at in-network and Tenet providers (except certain preventive expenses), which must be met before the plan starts to pay for non-preventive expenses.

20.     None of the drugs were categorized as "preventive."

21.     The drugs were also covered by another health insurance plan.

22.     In addition, the drugs for the following claims (the "Copay Claims") were covered by a drug copay assistance program:

- 200285198882000
- 200314883808022
- 200555404472041
- 200235531465017
- 200525221215014

23.     None of the drugs for the Copay Claims were "specialty" drugs.

24.     Optum did not credit the amounts paid by the other plan to its accounting of the Tenet plan's deductible and out-of-pocket maximums.

25.     Optum also did not credit the amounts paid by the copay assistance program to its accounting of the deductible and out-of-pocket maximums.

**BCBS-TX Did Not (Intentionally) Apply the Offsets**

26.     BCBS-TX credited the full expenses (i.e., the Prescription Drug Program's full contracted network rates for the drugs) to its accounting of at least the deductible, without any deduction, except for the 200285284272000 and 200285198882000 claims (the "Paper Claims").

27.     The Paper Claims are two claims that Plaintiff had to manually submit to Optum due to an Optum error.

28.     Optum has informed Plaintiff that its claim records do not show the full contracted rates for the Paper Claims, due to the manual submission. Based on that, Optum did not provide BCBS-TX those amounts.

**Plaintiff Tries to Appeal and Gets the Runaround**

29.     In a letter to Optum dated February 7, 2020, Plaintiff appealed the COB Claims submitted up to February 7, 2020, challenging the failure to credit the other plan's or copay assistance program's payments to the deductible and out-of-pocket maximums, and requested all documents, records, and other information relevant to the claims, specifically citing 29 CFR § 2560.503-1(m)(8).

30.     This letter was delivered to Optum on February 11, 2020.

31.     A copy of this letter was also sent to the Tenet BAC.

32.     The copy to the Tenet BAC was delivered on February 11, 2020.

33.     In a letter to Optum dated February 25, 2020, Plaintiff appealed the COB Claims submitted after February 7, 2020, challenging the failure to credit the other plan's or copay assistance program's payments to the deductible and out-of-pocket maximums, and requested all documents, records, and other information relevant to the claims, specifically citing 29 CFR § 2560.503-1(m)(8).

34.     This letter was delivered to Optum on March 2, 2020.

35.     Optum (or anyone working for the plan) did not provide any communication to Plaintiff regarding any appeals until March 18, 2020.

36.     On March 18, 2020, Optum did not provide Plaintiff any appeal decision or indication that such a decision had been made.

37.     By March 18, 2020, the 30-day deadline for Optum to respond to the appeals in Plaintiff's February 7, 2020 letter had already expired.

38.     In a March 24, 2020 call, Optum claimed that it was not responsible for handling administrative appeals for the plan.

39.     Optum is responsible for handling such appeals. (Ex. B at 200-01.)

40.     After this March 24, 2020 call with Optum and on that day, Plaintiff emailed Tenet Health & Welfare Benefits Manager Cloris Sampson to request her assistance in resolving the misunderstanding with Optum. In this email, Plaintiff informed Ms. Sampson that Optum was already late in responding to the appeals in the February 7, 2020 letter and asked her to have Optum expedite its review.

41.     Ms. Sampson had previously identified herself to Plaintiff as a "representative working on behalf of" the Tenet BAC.

42.     The next day, Ms. Sampson responded that she would "contact Optum to ensure they review and respond to your appeal."

**Optum Denies the Appeals and Lies About Notifying Plaintiff**

43.     By April 6, 2020, Plaintiff had not received any further follow-up from Optum (or anyone working for the plan) regarding any appeals.

44.     In an April 6, 2020 call Plaintiff made to Optum, Optum informed Plaintiff that the appeals in his February 7, 2020 letter were denied and claimed to have provided notification of this denial via phone on March 18, 2020.

6

45.     In this April 6, 2020 call, Plaintiff disputed Optum's claim of notification on March 18, 2020 and pointed out that a phone call was not a proper notice of an appeal decision under the plan's appeal procedures in any case.

46.     In this April 6, 2020 call, Plaintiff requested references to the plan provisions the decision was based on.

47.     In this April 6, 2020 call, Optum provided no such references.

48.     In this April 6, 2020 call, Plaintiff requested a written decision.

49.     In this April 6, 2020 call, Plaintiff emphasized that the written notice needed to include references to the plan provisions the decision was based on.

50.     This April 6, 2020 call was, in fact, the first time Plaintiff was informed of any appeal decision.

51.     By April 6, 2020, the 30-day deadline for Optum to respond to the appeals in either of Plaintiff's letters had already expired.

52.     After this April 6, 2020 call with Optum and on that day, Plaintiff emailed Ms. Sampson to inform her that Optum was still not handling the appeals properly. Plaintiff specifically mentioned the lack of a written notice, citations to plan provisions, or administrative records, and the untimeliness of the "response."

53.     A few days later, on April 9, 2020, Ms. Sampson responded that she had "escalated this to our account executive at OptumRx."

**Optum Finally Provides a Written "Notice"**

54.     Optum finally provided a written notice in the form of a one-page letter dated April 24, 2020, explaining the decision in only one paragraph:

> Based on your plan specifications, only the member pay responsibility applies towards the plan Deductible and Out-of-Pocket accumulators. The amounts paid by a primary plan or a coupon card do not apply towards your accumulators under a secondary plan. Therefore, the amounts applied on

the claims in question are appropriate. As communicated verbally on March 18, 2020 and April 6, 2020, this Benefit Exception is denied since the amounts in question were paid by a primary plan or a coupon card.

55.     This April 24, 2020 denial letter purported to be in response to a letter Optum received on March 4, 2020.

56.     Neither of Plaintiff's letters to Optum were delivered on March 4.

57.     In a May 5, 2020 call with Optum representative Stephanie Almond, Plaintiff again requested an explanation with references to plan provisions.

58.     On May 12, 2020, Ms. Almond emailed Plaintiff that an internal Optum department had "[r]econfirmed" that "this was handled properly" and "confirmed with the plan that if [Plaintiff] is seeking any further review regarding this inquiry, then [Plaintiff] should submit [his] inquiry to the" Tenet BAC.

59.     The Voluntary BAC Review level of appeal is only available after actually completing the internal appeal process. (Ex. B at 202.)

60.     Plaintiff's appeals never completed the second internal appeal level.

61.     Therefore, Optum's statement, attributed to "the plan," that Plaintiff should contact the Tenet BAC if he sought "any further review" misrepresented the plan's appeal procedures, because Voluntary BAC Review was not available.

62.     The statement also misrepresented the plan's appeal procedures and ERISA by implying that Voluntary BAC Review was the only option for "any further review," without mentioning external review, litigation, or arbitration.

63.     That same day, on May 12, 2020, Plaintiff responded to Ms. Almond reiterating that he did not believe the appeals were "handled properly" because, among other reasons, Optum had not cited to any plan provisions. Plaintiff asked Ms. Almond to clarify if it was actually Tenet's position that the appeals were "handled properly" and to check the status of the administrative record requests.

64.     Also on May 12, 2020, Plaintiff emailed Ms. Sampson to explain that Optum's notice was still insufficient. Plaintiff specifically mentioned the failure to cite to plan provisions, identify specific claims, or provide administrative records. Plaintiff also informed Ms. Sampson in this email that the deficiencies were not merely "de minimis," but were actually prejudicial to his position by denying him the ability to understand the plan's position and properly respond.

65.     Ms. Sampson never responded directly to this May 12, 2020 email.

66.     On May 15, 2020, Ms. Almond emailed Plaintiff another response from the Optum department. In response to the question if it was Tenet's position that the appeals were "handled properly," Optum wrote: "Correct. Also, this is not a clinical appeal; therefore, is not reviewed by the PA/Appeal team. His inquiries were handled by Member Services and his Tenet plan setup was upheld." In response to the question about the administrative records: "This is not an appeal; therefore, is not reviewed by the PA/Appeal team. His inquiries were handled by PSS/Member Services. Verbal communications have been provided and a one-time member letter. Member is not due any further communications/records as these benefit exceptions were handled by Account Team/Client Service team."

**Plaintiff's Appeals Were Appeals**

67.     29 CFR § 2560.503-1(h)(1) requires ERISA plans, and 29 CFR § 2590.715-2719(b)(2)(i) requires group health plans, to permit the appeal of any "adverse benefit determination." An adverse benefit determination includes "a failure to provide or make payment (in whole or in part) for[] a benefit."

68.     The DOL explains at https://www.dol.gov/agencies/ebsa/about-ebsa/our-activities/resource-center/faqs/benefit-claims-procedure-regulation in question

C-12 that it interprets that language to include "any instance where the plan pays less than the total amount of expenses submitted with regard to a claim."

69.     The determinations Plaintiff appealed were "adverse benefit determinations" within the meaning of 29 CFR § 2560.503-1(m)(4).

70.     If the determinations Plaintiff appealed were not appealable under the plan's appeal procedures, the appeal procedures do not comply with 29 CFR § 2560.503-1(h)(1) or 29 CFR § 2590.715-2719(b)(2)(i).

71.     If the plan's appeal procedures do not provide for the administrative record when Optum considers an appeal to be a "benefit exception" or has the "Account Team/Client Service team" handle it, the appeal procedures do not comply with 29 CFR § 2560.503-1(i)(5) or 29 CFR § 2590.715-2719(b)(2)(ii)(C).

**Ms. Sampson Misrepresents the Plan and Ignores Plaintiff's Emails**

72.     On June 1, 2020, Ms. Sampson emailed Plaintiff to "confirm if you've submitted an appeal to the Benefit Administration Committee."

73.     This June 1, 2020 email was unprompted by Plaintiff.

74.     That same day, Plaintiff responded to Ms. Sampson that he was planning to mail a letter to the Tenet BAC the next day, but not a request for Voluntary BAC Review. Plaintiff explained in this email that he was confused by the mentions of a BAC appeal because of his belief that such an appeal was only available after completing the internal appeal process, and asked for clarification.

75.     Ms. Sampson never responded to Plaintiff's June 1, 2020 email, despite a follow-up email from Plaintiff on June 9, 2020.

76.     Ms. Sampson's implication that Voluntary BAC Review was available was a misrepresentation of the plan's appeal procedures.

**Plaintiff Is Deemed to Have Exhausted Administrative Remedies**

77.     The plan never provided Plaintiff any administrative records.

78.     None of the plan's communications to Plaintiff regarding any of the appeals identified any specific claims by date of service, healthcare provider, claim amount, or claim number.

79.     None of the plan's communications to Plaintiff regarding any of the appeals or claims included references to any plan provisions, except for an August 14, 2020 letter from Tenet Senior Director of Benefits Betsy Harrison.

80.     None of the plan's communications to Plaintiff regarding any of the appeals included a statement of Plaintiff's right to receive reasonable access to, and copies of, all documents, records, and other information relevant to the claims.

81.     None of the plan's communications to Plaintiff before August 14, 2020 regarding any of the appeals described available internal appeals.

82.     None of the plan's communications to Plaintiff before August 14, 2020 regarding any of the appeals described available external reviews.

83.     None of the plan's communications to Plaintiff on or after August 14, 2020 regarding any of the appeals described available internal appeals.

84.     None of the plan's communications to Plaintiff on or after August 14, 2020 regarding any of the appeals described available external reviews.

85.     None of the plan's communications to Plaintiff before August 14, 2020 regarding any of the appeals described Voluntary BAC Review procedures.

86.     None of the plan's communications to Plaintiff before August 14, 2020 regarding any of the appeals described Plaintiff's right to obtain the details specified in 29 CFR § 2560.503-1(c)(3)(iv) about Voluntary BAC Review.

87.     None of the plan's communications to Plaintiff on or after August 14, 2020 about any of the appeals described Voluntary BAC Review procedures.

88.     None of the plan's communications to Plaintiff on or after August 14, 2020 regarding any of the appeals described Plaintiff's right to obtain the details specified in 29 CFR § 2560.503-1(c)(3)(iv) about Voluntary BAC Review.

89.     None of the plan's communications to Plaintiff regarding any of the appeals described the plan's binding arbitration procedures or Plaintiff's right to obtain information about those procedures, except the August 14, 2020 letter.

90.     Even the August 14, 2020 letter did not describe Plaintiff's right to obtain the details specified in 29 CFR § 2560.503-1(c)(3)(iv) about the voluntary binding arbitration procedures.

91.     None of the plan's communications to Plaintiff regarding any of the appeals informed Plaintiff of his right to sue, except the August 14, 2020 letter.

92.     None of the plan's communications to Plaintiff regarding any of the appeals indicated whether an internal rule, guideline, protocol, or other similar criterion was used in the decision, unless the "plan specifications" constitute one.

93.     None of the plan's communications to Plaintiff regarding any of the appeals included any internal rule, guideline, protocol, or other similar criterion.

94.     None of the plan's communications to Plaintiff regarding any of the appeals stated that an internal rule, guideline, protocol, or other similar criterion was available.

95.     None of the plan's communications to Plaintiff regarding any of the appeals indicated whether any standard was used in the decision, unless the "plan specifications" Optum referenced constitute one.

96. None of the plan's communications to Plaintiff regarding any of the appeals included a description of any standard.

97. None of the plan's communications to Plaintiff regarding any of the appeals included a copy of the "plan specifications" Optum referenced in the April 24, 2020 denial letter, or a statement that those were available.

98. None of the plan's communications to Plaintiff regarding any of the appeals included the statement in 29 CFR § 2560.503-1(j)(5)(iii).

99. None of the plan's communications to Plaintiff regarding any of the appeals disclosed the availability of, or contact information for, any applicable office of health insurance consumer assistance or ombudsman.

100. To the extent anything the plan provided constitutes a "rationale" for an appeal decision, Plaintiff was not provided an opportunity to respond to it before the date the decision was required.

101. The plan never provided Plaintiff any evidence considered.

102. A full and fair review of Plaintiff's appeals would, by necessity, include reviewing the underlying plan documents.

103. Optum never conducted any such review, as evidenced by, e.g., its failure to cite any supporting authority other than the vague "plan specifications."

104. Instead of conducting an actual review, Optum simply restated the initial determinations, i.e., deferred to the prior decisions.

105. The plan has failed to comply with its appeal procedures, or establish or follow appeal procedures consistent with 29 CFR § 2560.503-1 and 29 CFR § 2590.715-2719(b)(2), including by failing to respond to the appeals within 30 days (Ex. B at 201; 29 CFR § 2560.503-1(i)(2)(iii)(A)); provide a denial notice that includes the required information (Ex. B at 195-96; 29 CFR § 2560.503-1(j);

13

29 CFR § 2590.715-2719(b)(2)(ii)(E)); provide an opportunity to respond to the rationale for the denials before the date the decisions were required, to the extent a rationale has been provided (Ex. B at 196; 29 CFR § 2590.715-2719(b)(2)(ii)(C) (2)); provide any evidence considered (Ex. B at 196; 29 CFR § 2590.715-2719(b) (2)(ii)(C)(1)); provide the administrative records (Ex. B at 196; 29 CFR § 2560.503-1(i)(5); 29 CFR § 2590.715-2719(b)(2)(ii)(C); and conduct an actual review of the appeals (Ex. B at 196; 29 CFR § 2560.503-1(h)(3)(ii)).

106.   As a result, Plaintiff is deemed to have exhausted administrative remedies under the plan (Ex. B at 203), 29 CFR § 2560.503-1(l)(1), and 29 CFR § 2590.715-2719(b)(2)(ii)(F). Under 29 CFR § 2590.715-2719(b)(2)(ii)(F), "[i]f a claimant chooses to pursue remedies under section 502(a) of ERISA," the "appeal is deemed denied on review without the exercise of discretion by" a fiduciary.

107.   The plan's failures were prejudicial to Plaintiff by, among other things, denying him the ability to understand the plan's position and the provisions it was relying on, which limited his ability to effectively pursue his appeals.

108.   The plan's failures were not "in the context of an ongoing, good-faith exchange of information," as evidenced by, among other things, Optum's refusal to process the appeals as appeals, the misrepresentations of the plan by Optum and Tenet, Optum's false claims of providing a denial notification on March 18, 2020, and the multiple emails that Ms. Sampson ignored.

**Plaintiff Threatens to Sue and Finally Gets an Explanation**

109.   In an effort to avoid litigation, on June 16, 2020, Plaintiff wrote to Tenet General Counsel Audrey Andrews and the Tenet BAC outlining reasons why the offsets were improper and explaining how he was deemed to have exhausted administrative remedies. More specifically, Plaintiff explained in his letter that the

Prescription Drug Program does not exclude expenses covered by another health insurance plan and that the plan's coordination of benefits (COB) provisions do not provide for any reduction in the amounts credited to the deductible or out-of-pocket maximums. Plaintiff also noted in his letter that the plan only excludes copay assistance for specialty drugs. Plaintiff concluded by informing Ms. Andrews and the Tenet BAC that he would file suit if the matter was not resolved.

110.    This pre-litigation demand letter was delivered to Ms. Andrews and the Tenet BAC on June 22, 2020.

111.    Tenet Senior Director of Benefits Betsy Harrison responded in a letter dated August 14, 2020, denying Plaintiff's purported "appeal" because:

> Page 73 of the SPD clearly defines the deductible as the amount the participant must pay before the plan covers eligible prescription expenses. This is the same for the out of pocket maximum as reflected on page 60 of the SPD. The clear reading of these provisions means the participant, not a third party source, such as another medical plan or a copay assistance card, must pay the eligible expense in order for it to be counted toward the deductible or out of pocket maximum amounts. In other words, amounts paid by another medical plan or copay assistance card do not constitute amounts paid by the participant and, therefore, do not count toward the deductible or out of pocket maximum under the Tenet Medical Benefit Program. In addition, you are enrolled under the Tenet Silver plan, which is a High Deductible Health Plan. The Internal Revenue Service requires the participant to meet the deductible in order for the Silver Plan to provide coverage which is necessary to enable the participant to avail himself of a health savings account.

112.    Ms. Harrison concluded by stating:

> If you are displeased with the BAC's decision on your appeal, you have the right to submit your claim to binding arbitration or file a case in federal district court, as outlined in the Other Information Section of the SPD. As provided in Section 11.6 of the Tenet Employee Benefit Plan you have two years from the date of this letter to request binding arbitration or file suit.

113.    Section 11.6 does not apply to the healthcare benefits at issue. The limitation period that does apply is one year. (Ex. B at 203.)

114.    Ms. Harrison's assertion that Plaintiff had two years to bring a legal action was thus yet another misrepresentation of the plan.

**The Lines Are Blurred Between Tenet and the Tenet BAC**

115.    The DOL requires certain ERISA plan administrators to file a "Form 5500" annually with information about the administration of their plans.

116.    On all of the plan's Form 5500 filings since at least the 2009 plan year, the Tenet BAC was not identified as the plan administrator.

117.    On all of the plan's Form 5500 filings since at least the 2009 plan year, the plan administrator was identified as the plan sponsor, i.e., Tenet.

118.    Plan administrators are required to have an EIN for the Form 5500.

119.    On all of the plan's Form 5500 filings since at least the 2009 plan year, the EIN listed is 95-2557091, which is Tenet's, not the Tenet BAC's.

120.    Plaintiff has been unable to identify any EIN for the Tenet BAC.

121.    On information and belief[1], the Tenet BAC does not have an EIN.

122.    Tenet controls the composition of the Tenet BAC. (Ex. A § 13.2.)

123.    On information and belief, all members of the Tenet BAC are Tenet employees.

124.    If not all members of the Tenet BAC are Tenet employees, some are.

125.    For instance, Ms. Harrison signed the plan's most recent Form 5500 filing (the 2019 plan year filing, filed on July 1, 2020) as the plan administrator.

---

[1] The allegations in this complaint stated on information and belief are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

126.   Tenet's employment of the Tenet BAC members gives Tenet an additional mechanism to control those individuals.

127.   According to Ms. Harrison's LinkedIn profile at https://www.linkedin.com/in/betsy-harrison-b6620013 (last visited November 15, 2020), she started working for Tenet in November 2019, as Senior Director of Benefits.

128.   According to a March 26, 2019 job posting for the Senior Director of Benefits position at Tenet, available at https://webcache.googleusercontent.com/search?q=cache:https://ntcassoc.org/JobBoard/7257359 (at least as of November 15, 2020), the Senior Director of Benefits is compensated with a "[b]ase salary … supplemented by a performance bonus," and a significant part of that person's responsibilities are to minimize Tenet's benefit costs.

129.   Ms. Harrison's position is just one example of how Tenet's employment of the Tenet BAC members eliminates any pretense of impartiality.

130.   For these reasons, the Tenet BAC is simply an alter ego of Tenet.

131.   Tenet self-funds the healthcare benefits at issue. (Ex. B at 56, 72.)

132.   Because Tenet self-funds these benefits and employs the Tenet BAC members, the Tenet BAC operates under a structural conflict of interest.

133.   Tenet, the Tenet BAC, and the Tenet BAC members allowed their concern over their own interests to influence their dealings with Plaintiff.

**Other Claims Have Also Been Underpaid**

134.   The family deductible would have been met or nearly met by the COB Claims, if the plan had not applied any offsets.

135.   After the last of the COB Claims, Plaintiff and his family made several other claims where the plan calculated its payment for at least part of the expense based on its view of the deductible not being met (the "Other Claims").

136.    As a result, the plan underpaid the Other Claims.

137.    Plaintiff and his family actually paid the remaining balances (after the plan's payments) to the respective medical providers for their Other Claims.

138.    Plaintiff and his family have not appealed the payments on the Other Claims because doing so would be futile. The basis for such an appeal would be the deductible credits for the COB Claims, which Plaintiff has already attempted to appeal directly and which Optum and the Tenet BAC have refused to adjust.

### FIRST CAUSE OF ACTION

### Benefits Due [ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B)]

### (Against Both Defendants)

139.    Plaintiff incorporates paragraphs 6-138 here.

**The Offset for the Other Plan's Payments Is Unsupported by the Plan Terms**

140.    The Prescription Drug Program does not exclude expenses covered by another health insurance plan (Ex. B at 70), in contrast to the Medical Benefit Program which excludes "[s]ervices for which coverage is available … [u]nder another plan, except as described in Coordination of Benefits (COB)" (*id.* at 38).

141.    Therefore, the eligible expense amounts under the Prescription Drug Program for the COB Claims include the amounts paid by the other plan.

142.    As eligible, non-preventive expenses, the plan was required to credit those amounts to the deductible (until met) and out-of-pocket maximums (less any payment by the plan, or alternatively, less any payment by the plan and any payment the plan would have made in the absence of other coverage).

143.    The Prescription Drug Program is "subject to the Coordination of Benefits provisions as set forth in the Medical Benefit Program SPD section." (*Id.* at 71.) Those provisions provide, in relevant part:

18

All benefits provided under the Tenet Medical Benefit Program are subject to Coordination of Benefits ("COB").

COB provisions apply when the Covered Person is covered by the Tenet Medical Benefit Program and another benefit plan ("Other Benefit Plan").

The provisions establish which plans have primary and secondary responsibility for coverage, and the rules under which payment is made.

…

Payment Rules:

1. If the Tenet Medical Benefit Program is primary, it will pay benefits as if there is no secondary plan.
2. If the Tenet Medical Benefit Program is secondary, the rules of the plan with the higher Allowable Expense will be used to determine what the Tenet Medical Benefit Program will pay.
3. Regardless of whether primary or secondary, the Tenet Medical Benefit Program will reduce or eliminate payment as needed to prevent a greater amount of benefits being paid by both plans, than would otherwise be paid by a single plan. This is sometimes referred to as *Non-Duplication of Benefits*.

…

### *Definitions*

As used in this section, the following terms are defined as:

"Other Benefit Plan" means any arrangement providing health care benefits or services, including but not limited to: group, blanket, or franchise insurance coverage; group or individual practice or other prepayment coverage; labor management trusteed plans; union welfare plans; employer organization plans, or employee benefit organization plans; or any tax supported or governmental program.

"Allowable Expenses" means any Reasonable and Customary charges that would be considered Eligible Expenses incurred while the Covered Person is covered under this Plan. When this Plan is secondary, Allowable Expenses includes any expenses used to satisfy a deductible, co-insurance or co-payment requirement under any Other Benefit Plan except for any deductible, co-insurance or co-payment requirement under Personal Injury Protection, no-fault, medical payments provision, or any other category (including such benefits mandated by law) of any automobile or vehicle insurance plan.

(*Id.* at 40-42.)

144.    The COB provisions do not justify the offset, because they only address and operate to potentially reduce the *payments* the plan will make.

**The Offset for the Copay Assistance Payments Is Also Unsupported**

145.    The Prescription Drug Program excludes copay assistance *for specialty drugs* from applying to any deductible or out-of-pocket maximum:

> <u>Preferred Copay Card Acceptance Program</u>: Some specialty medications may qualify for third-party copayment assistance programs that could lower your out-of-pocket costs for those products. For any such specialty medication where third-party copayment assistance is used, the member shall not receive credit toward their maximum out-of-pocket or deductible for any third party copay assistance.

(Ex. B at 64.)

146.    That provision does not apply to the Copay Claims, because the drugs for the Copay Claims were not specialty drugs.

147.    There is no similar provision that applies to non-specialty drugs.

**The Expenses *Were* Paid by Plaintiff**

148.    The other health insurance policy explicitly characterizes its payments as "reimbursements," and does not provide medical services directly.

149.    The other plan's payments were reimbursements *to Plaintiff.*

150.    The copay assistance payments were reimbursements *to Plaintiff.*

151.    *Plaintiff* incurred the prescription expenses.

152.    *Plaintiff* paid the prescription expenses.

153.    *Plaintiff* received the reimbursements from the other sources.

154.    *Plaintiff* paid for the other plan.

155.    The fact that the other plan or copay assistance program paid the pharmacy directly does not alter the nature of the payments. The payments were made to the pharmacy *on Plaintiff's behalf*, for administrative convenience.

156.    The other plan and copay assistance program both have procedures where Plaintiff could have paid the pharmacy and requested reimbursement after.

157.    If the other plan or copay assistance program had denied or reversed coverage for the expenses (which could even occur retroactively, in some cases), it is *Plaintiff* who would have been liable to repay the pharmacy.

**The Plan Does Not Operate Consistently**

158.    ERISA plans must be administered uniformly. E.g., 29 CFR § 2560.503-1(b)(5). Section 13.4 of the plan document (Ex. A) requires the same.

159.    By virtue of BCBS-TX and Optum accounting for the same deductible differently, the plan does not operate consistently.

160.    In addition, the plan does not actually operate under the strict linkage between first-party payments and deductible and out-of-pocket maximum crediting that Ms. Harrison tries to suggest in her August 14, 2020 letter.

161.    Medical providers often provide medical services without collecting full payment upfront, and only bill the patient for the balance afterwards.

162.    The plan applies deductible and out-of-pocket maximum credits when claims are approved, regardless of whether any balance has been paid.

163.    The plan does not remove those credits unless a claim is reversed.

164.    The plan does not remove those credits if it learns a member has been billed for their cost-share but has failed to pay the medical provider.

165.   On information and belief, the plan does not remove those credits if it learns that a family member, friend, GoFundMe, or similar charitable source has paid the member's cost-share.

166.   On information and belief, the plan does not even attempt to ascertain whether a bill for a member's cost-share has actually been paid.

167.   For instance, on information and belief, the plan does not monitor bankruptcy filings to determine if medical debt has been discharged in bankruptcy.

**The Plan Does Not Consistently Apply the Copay Assistance Offset**

168.   In the absence of other insurance, the plan credits copay assistance for non-specialty drugs to the deductible and out-of-pocket maximums.

169.   Plaintiff has confirmed that this was the case for one of his claims, in which copay assistance was applied at the pharmacy and thus known to Optum.

170.   The plan terms do not provide any basis for this distinction.

**Operating in the Way Ms. Harrison Suggests Would Be Illegal**

171.   When a Tenet plan member is covered by Medicare, the Medicare Secondary Payer (MSP) Act determines which plan is primary. When a Tenet plan member is covered by Medicaid, ERISA § 609(b)(2), 29 U.S.C. § 1169(b)(2) requires the plan to provide its benefits without regard to Medicaid benefits.

172.   By requiring that "the participant, not a third party source, such as another medical plan …, must pay the eligible expense in order for it to be counted toward the deductible or out of pocket maximum amounts," the plan would violate the MSP Act when Medicare is secondary, or ERISA when Medicaid is present.

**Cause of Action**

173.   By failing to credit the full expenses for the COB Claims to the deductible and out-of-pocket maximums, underpaying the Other Claims based on

the resulting incorrect accounting of the deductible, and failing to comply with the plan's appeal procedures, Defendants have violated the terms of the plan.

174.    By way of Ms. Harrison's August 14, 2020 letter, the Tenet BAC purports to have had the authority to decide the COB Claims, and purports to have made a final and binding decision not to make any adjustments.

## SECOND CAUSE OF ACTION

### Failure to Disclose Offsets [ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3)]

### (Against Defendant Tenet BAC)

175.    Plaintiff incorporates paragraphs 6-138 here.

**The SPDs Do Not Disclose the Offset for Another Plan's Payments**

176.    The plan's 2019 and 2020 SPDs do not contain language that reasonably could be calculated to be understood by the average plan participant or beneficiary to exclude expenses paid by another health insurance plan from applying to the deductible and out-of-pocket maximums.

177.    The 2019 and 2020 SPDs have a section titled "When You're Covered by Another Prescription Drug Plan (Coordination of Benefits)." (2019 SPD at 73; Ex. B at 71 (2020 SPD).) That section is identical in both SPDs, and contains only one sentence, directing the reader to the COB provisions.

178.    The COB sections of the 2019 and 2020 SPDs are also identical. (2019 SPD at 41-43; Ex. B at 40-43 (2020 SPD).) The COB provisions state that they may "reduce or eliminate payment" when other coverage is present.

179.    Payments are not deductible or out-of-pocket maximum credits.

180.    The COB provisions do not include any language regarding an effect on deductibles or out-of-pocket maximums.

23

181.    29 CFR § 2520.102-3(j) requires an SPD to describe "[t]he plan's requirements respecting eligibility for participation and for benefits", including "a description of: any cost-sharing provisions, including … deductibles."

182.    By failing to explain that expenses paid by another plan do not apply to the deductible or out-of-pocket maximums, the SPDs violate ERISA § 102(b), 29 U.S.C. § 1022(b) by failing to explain "circumstances which may result in … loss of benefits," and 29 CFR § 2520.102-3(l) by failing to "clearly identify[] circumstances which may result in … offset, [or] reduction[] … of any benefits that a participant or beneficiary might otherwise reasonably expect."

### There Are No Clarifying Examples or Illustrations for This Offset

183.    The COB sections of the 2019 and 2020 SPDs include one example scenario that "is intended to help illustrate how primary and secondary coverage is administered." (2019 SPD at 42; Ex. B at 42 (2020 SPD).)

184.    That example shows how the plan reduces its payment, but does not show any effect on deductibles or out-of-pocket maximums.

185.    By failing to include a clarifying example or illustration that shows the effect of other coverage on the deductible and out-of-pocket maximums, and including an example that shows no effect, the SPDs are not "written in a manner calculated to be understood by the average plan participant" or "sufficiently comprehensive to apprise the plan's participants and beneficiaries of their rights and obligations under the plan," which "will usually require … the use of clarifying examples and illustrations," in violation of 29 CFR § 2520.102-2(a).

### The Format of the SPDs is Misleading

186.    The "When You're Covered by Another Prescription Drug Plan (Coordination of Benefits)" and COB sections are where the 2019 and 2020 SPDs explain how the plan interacts with other plans.

187.    A participant or beneficiary would reasonably expect restrictions, limitations, offsets, etc. that apply with other coverage to be explained there.

188.    By failing to explain in those sections that expenses paid by another plan do not apply to the deductible or out-of-pocket maximums, the SPDs fail to disclose "restrictive plan provisions … in close conjunction with the description or summary of benefits," and the format "mislead[s], misinform[s] or fail[s] to inform participants and beneficiaries," in violation of 29 CFR § 2520.102-2(b).

### The SPDs Also Do Not Disclose the Offset for Copay Assistance

189.    The 2019 and 2020 SPDs do not contain language that reasonably could be calculated to be understood by the average plan participant or beneficiary to exclude expenses paid by a copay assistance program for non-specialty drugs from applying to the deductible and out-of-pocket maximums.

190.    To the contrary, the SPDs have an explicit provision to that effect *for specialty drugs* (2019 SPD at 69; Ex. B at 64 (2020 SPD)), but not other drugs.

191.    By failing to explain that copay assistance for non-specialty drugs may not apply to the deductible or out-of-pocket maximums, the SPDs violate ERISA § 102(b), 29 U.S.C. § 1022(b) by failing to explain "circumstances which may result in … loss of benefits," and 29 CFR § 2520.102-3(l) by failing to "clearly identify[] circumstances which may result in … offset, [or] reduction[]."

192.    By explicitly excluding copay assistance only for specialty drugs, the SPDs fail to disclose "restrictive plan provisions … in close conjunction with

the description or summary of benefits," and the format "mislead[s], misinform[s] or fail[s] to inform," in violation of 29 CFR § 2520.102-2(b).

**BCBS-TX Evidences the Confusion**

193.   According to a 2019 report by America's Health Insurance Plans at https://www.ahip.org/wp-content/uploads/StateDataBook_2019-FINAL.pdf, the Health Care Service Corporation (HCSC) was the third largest commercial health insurer in the country by number of covered lives. BCBS-TX is part of HCSC.

194.   If BCBS-TX could not read the plan to exclude expenses paid by another plan or copay assistance program from applying to at least the deductible, it is hopeless to think the average plan participant or beneficiary could.

**Plaintiff and His Family Relied on the SPD**

195.   Plaintiff's parents provide and pay the premiums for health insurance for Plaintiff and his siblings, who are all under 26 years old.

196.   During the annual enrollment season for 2020 coverage, Plaintiff's parents asked him to review their health insurance options and advise them what choices to make. Plaintiff's parents trust him to analyze these matters, and both parents would make, and pay the premiums for, any elections he recommended.

197.   Plaintiff's mother was able to choose from several Tenet medical plan options, including "Bronze," "Silver," "Gold," and "Platinum."

198.   Plaintiff takes an expensive drug. An important consideration, and his parents' desire, was to ensure his plan would cover that drug cost-effectively.

199.   Plaintiff's mother also knew she would be having expensive medical tests in 2020. Another important consideration was to ensure her plan would cover that cost-effectively, which initially lead her to take interest in the Gold plan.

200.    After reviewing the options and combinations across both parents' employers, Plaintiff determined the best option for himself, his mother, and his siblings was the Silver plan, in conjunction with Plaintiff obtaining another health insurance plan to cover the high deductible that would apply to his prescription.

201.    Under that approach, the family deductible would quickly be met by Plaintiff's prescription expenses, after which Plaintiff would cancel the other plan. The deductible being met would also allow Plaintiff's mother to have her testing done without a deductible, while keeping the doctors she likes and trusts.

202.    Before proceeding, Plaintiff reviewed the most current Tenet SPD available at the time, the 2019 SPD, looking for any restrictive COB or other provisions that would exclude expenses paid by another plan from applying to the deductible. Plaintiff noted nothing besides a standard COB provision that reduced or eliminated duplicative payments, but not deductible or out-of-pocket maximum credits, consistent with what Plaintiff understood to be health insurance norms.

203.    Tenet's enrollment materials also listed no material changes between the 2019 and 2020 plans besides a minor deductible increase for the Silver plan.

204.    Plaintiff explained his findings to his parents. Based on his review of the 2019 SPD and the lack of plan changes, Plaintiff and his family believed the plan would credit all expenses to the deductible and out-of-pocket maximums, even if paid by another plan. Plaintiff therefore advised his mother to enroll herself and the children in the Silver plan, and advised his father not to elect dependent coverage from his employer. Plaintiff's parents acted accordingly.

**Plaintiff and His Family Were Harmed by the Misleading SPD**

205.    By the time Plaintiff and his family learned the plan would apply these offsets, it was too late to change plans.

27

206.    The Bronze, Gold, and Platinum plans in 2020 cover prescriptions with no deductible, at the same cost-sharing as the Silver plan. (Ex. B at 65.)

207.    The Gold and Platinum plans in 2020 cover medical services at Tenet providers with no deductible.

208.    Under the Gold and Platinum plans, Plaintiff's mother would have been able to have her tests done without a deductible, by using Tenet doctors.

209.    If the SPD had disclosed that the plan would not credit expenses paid by another plan to the deductible, Plaintiff would have advised his mother to choose the Gold or Platinum plan, and she would have done so.

210.    Alternatively or additionally, Plaintiff would have obtained coverage under his father's plan, which has only a nominal prescription deductible.

211.    Alternatively or additionally, Plaintiff would have obtained other coverage that was available to him with no prescription deductible.

212.    If not for the misleading SPD, Plaintiff and his family would have been able to avoid paying any deductible for their medical care, and Plaintiff would not have purchased and paid for another health insurance plan for himself.

**Cause of Action**

213.    In addition to and as a result of the violations described above, the SPDs are not "written in a manner calculated to be understood by the average plan participant" or "sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan," in violation of ERISA § 102(a), 29 U.S.C. § 1022(a) and 29 CFR § 2520.102-2(a).

214.    As a result of all of these violations, the average plan participant or beneficiary would not have understood, and Plaintiff and his family did not

28

understand, that expenses paid by another plan or copay assistance program (for non-specialty drugs) do not apply to the deductible or out-of-pocket maximums.

215.   The Tenet BAC was the administrator in 2019. (2019 SPD at 227.)

216.   As the plan administrator, the Tenet BAC is a "fiduciary" within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(3)(21)(A). Among its fiduciary duties are to comply with ERISA and provide complete and accurate information to participants and beneficiaries, without misleading or misinforming them.

217.   By providing a misleading SPD that does not comply with ERISA, the Tenet BAC breached its fiduciary duty to Plaintiff and his family. As a result, Plaintiff and his family have had to pay a deductible they otherwise would have been able to avoid paying, and Plaintiff paid premiums for an insurance plan he would not have purchased if he knew the Tenet plan would offset its payments.

218.   As Tenet self-funds these health benefits, Tenet and the Tenet BAC have been unjustly enriched by this breach of fiduciary duty, by keeping the benefit of Plaintiff's other plan while Plaintiff paid the premiums.

### THIRD CAUSE OF ACTION

**Failure to Timely Provide Plan Documents [ERISA § 502(a)(1)(A), 29 U.S.C. § 1132(a)(1)(A)]**

**(Against Defendant Tenet BAC)**

219.   Plaintiff incorporates paragraphs 6-11 and 14-15 here.

220.   In a letter to the Tenet BAC dated January 2, 2020, Plaintiff requested the plan's SPD and governing plan documents.

221.   This letter was delivered to the Tenet BAC on January 7, 2020.

222.   In a letter to the Tenet BAC dated February 7, 2020, Plaintiff again requested the plan's SPD and governing plan documents.

223. In this letter, Plaintiff specifically informed the Tenet BAC that it was required by 29 U.S.C. § 1024(b)(4) to comply with his requests, and that failure to comply may subject it to penalties of up to $110 per day.

224. This letter was delivered to the Tenet BAC on February 11, 2020.

225. The Tenet BAC did not provide any documents until a letter dated March 16, 2020, which was accompanied by the plan document and SPD. In the letter dated March 16, 2020, Ms. Sampson "apologize[d] for the delay in responding as we were awaiting final sign-off of the plan document."

226. The documents were delivered to Plaintiff on March 19, 2020.

227. ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4) requires administrators to provide participants and beneficiaries the SPD and governing plan documents upon written request. Under ERISA § 502(c)(1), 29 U.S.C. § 1132(c)(1), an administrator who fails to comply with such a request within 30 days may be liable for up to $110 per day in penalties. ERISA § 502(a)(1)(A), 29 U.S.C. § 1132(a)(1)(A) permits a participant or beneficiary to sue for those penalties.

228. Plaintiff is entitled to statutory penalties from the Tenet BAC for its failure to provide the documents he requested within 30 days.

### REQUEST FOR RELIEF

Plaintiff requests that the Court:

A. Order that the plan be reformed as necessary to provide that eligible expenses paid by another health insurance plan or copay assistance program (for non-specialty drugs) apply to the deductible and out-of-pocket maximums;

B. Declare that the full expenses for the COB Claims should have been credited to the deductible and out-of-pocket maximums;

30

C.     Order the plan and Tenet BAC to credit the full expenses for the COB Claims to the deductible and out-of-pocket maximums, retroactive to the original claim dates, and reprocess the Other Claims accordingly for Plaintiff and his family (under § 502(a)(1)(B) or § 502(a)(3), e.g., as a surcharge);

D.     Award Plaintiff damages in the amount of the underpayments of his Other Claims, to the extent not addressed by an order requiring reprocessing;

E.     Declare and order that, in the future, the plan and Tenet BAC must credit expenses paid by another health insurance plan or copay assistance program (for non-specialty drugs) to the deductible and out-of-pocket maximums;

F.     Provide any other appropriate equitable relief, including a surcharge against the Tenet BAC for the deductible, and the premiums for the other plan, to the extent not duplicative of any relief provided for the § 502(a)(1)(B) claim;

G.     Award Plaintiff statutory penalties of $110 per day, per violation, against the Tenet BAC for its failure to timely provide plan documents;

H.     Award Plaintiff attorney's fees (if any) and the costs of this action under ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1) or any other law;

I.     Award pre-judgment and post-judgment interest; and

J.     Provide any other relief the Court deems proper.

Date: November 27, 2020

_Edw C. Kukiela_

Edward C. Kukiela