# Exhibit A

01/01/2020

# TENET EMPLOYEE BENEFIT PLAN

**As Amended and Restated**
**Effective January 1, 2020**

## TENET EMPLOYEE BENEFIT PLAN

### As Amended and Restated Effective January 1, 2020

### W I T N E S S E T H:

**WHEREAS**, effective October 1, 1977, National Medical Enterprises, Inc. established the National Medical Enterprises, Inc. Employee Medical Benefit Plan (the "**Plan**") for the benefit of its employees;

**WHEREAS**, the Plan was amended and restated as of January 1, 1993, as the National Medical Enterprises, Inc. Employee Benefit Plan, to reflect the adoption of the Plan by those subsidiaries and affiliates of National Medical Enterprises, Inc. ("**NME**") who formerly were sponsors of the P.I.A. Employee Medical Benefit Plan ("**PIA Plan**");

**WHEREAS**, in connection with such plan merger, the trust agreements used to fund the Plan and the PIA Plan were merged into a single trust denominated the National Medical Enterprises, Inc. Employee Benefit Trust (the "**Employee Benefit Trust**");

**WHEREAS**, the name of the Plan was changed effective as of March 1, 1995, to the Tenet Employee Benefit Plan and the name of the Employee Benefit Trust was changed effective as of March 1, 1995 to the Tenet Employee Benefit Plan Trust (the "**VEBA**") to reflect the merger of NME and American Medical Holdings, Inc., parent of American Medical International, Inc. ("**AMI**"), and the subsequent change in the name of the merged company to Tenet Healthcare Corporation (the "**Company**");

**WHEREAS**, effective as of January 1, 1996, the AMI health and welfare plans were merged with and into the Plan, with this Plan being the surviving plan;

**WHEREAS**, effective as of January 1, 1998, pursuant to Tenet's purchase of OrNda Healthcorp ("**OrNda**"), the OrNda health and welfare plans were merged with and into the Plan;

**WHEREAS**, the Plan was amended and restated effective January 1, 1996 to reflect the above- plan mergers;

**WHEREAS**, the Plan was amended effective April 14, 2003 to comply with the privacy and related rules promulgated under the Health Insurance Portability and Accountability Act of 1996 ("**HIPAA**");

**WHEREAS**, the Company amended and restated the Plan effective January 1, 2003, to (i) incorporate the HIPAA privacy amendment, (ii) comply with recent changes in the law including, but not limited to, the new claims rules issued by the Department of Labor, and (iii) clarify the manner in which benefits under the Plan are treated for purposes of the Annual Report, Form 5500;

**WHEREAS**, effective January 1, 2003, all of the benefits provided under this Plan except the insured executive medical benefits ("**ExecuPlan**") specified under Appendix A in effect at that time were filed under a single Annual Report, Form 5500, under plan number 515 ("**Plan 515**") [prior to January 1, 2003, this single plan was filed under two

Form 5500 filings using plan numbers 515 and 504] and during its existence the ExecuPlan was filed as a separate plan under plan number 517 ("**Plan 517**");

**WHEREAS**, all employee contributions to fund the benefits provided pursuant to Plan 515 as described herein were held in the VEBA and certain benefits provided pursuant to Plan 515 were paid from the VEBA; however, neither the contributions to nor the benefits provided under the ExecuPlan were provided through the VEBA;

**WHEREAS**, the Company amended and restated the Plan effective January 1, 2005, unless a later date was set forth in such amendment and restatement, to (i) comply with the security provisions of HIPAA; (ii) comply with changes to the regulations issued by the Internal Revenue Service concerning the continuation of coverage requirements of the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended; (iii) address changes to the definition of "dependent" in Internal Revenue Code section 152 made by the Working Families Tax Relief Act of 2004; and (iv) allow for coverage under the Plan of an Employee's domestic partner who meets the "Criteria for Domestic Partnership Status" attached as Appendix B to this Plan;

**WHEREAS**, the Company amended the Plan, effective January 1, 2007, to allow for pre-tax payment of "health savings account" contributions through the Cafeteria Program;

**WHEREAS**, the Company amended the Plan, effective July 1, 2007, to (i) reflect the termination of the VEBA, (ii) clarify the payment of after-tax contributions, (iii) clarify the definition of "qualified beneficiaries" for COBRA coverage, and (iv) vest appointment authority over the Benefits Administration Committee in the Senior Vice President of Human Resources;

**WHEREAS**, the Company amended and restated the Plan, effective January 1, 2011 (or such other effective date as is set forth herein) to (i) comply with the Patient Protection and Affordable Care Act of 2010 and the Health Care and Education Reconciliation Act of 2010 effective as of January 1, 2011; (ii) reflect the termination of ExecuPlan; and (iii) make certain other clarifying changes;

**WHEREAS**, the Company amended and restated the Plan, generally effective September 16, 2013, to reflect changes in the law regarding recognition of same-sex spouses and effective March 1, 2014 to delegate to the Daily Administrator the authority to amend the Plan;

**WHEREAS**, the Daily Administrator amended and restated the Plan, generally effective January 1, 2015 unless an earlier or later date is stated, to update the Major Life Events to comply with guidance issued under the Affordable Care Act, add the Health Reimbursement Account Program, make certain other administrative clarifications and update Appendix A;

**WHEREAS**, the Daily Administrator amended and restated the Plan, generally effective January 1, 2017 unless an earlier date is stated, to add language regarding subrogation, assignment and payment of benefits, reflect that certain affiliates do not participate in the Plan, clarify when prior service for employees of acquired facilities or acquired employee groups and outsourced operations will be considered under the Plan, and make certain other administrative clarifications;

**WHEREAS**, the Daily Administrator amended and restated the Plan, generally effective January 1, 2018 unless an earlier date is stated, to add and revise language regarding subrogation and make certain other administrative clarifications; and

**WHEREAS**, the Daily Administrator desires to amend and restate the Plan, generally effective January 1, 2020 unless an earlier date is stated, to make certain administrative clarifications.

**NOW, THEREFORE**, the Plan is hereby amended and restated as follows:

**EXECUTED** this 13th day of March , 2020.

                                   **TENET HEALTHCARE CORPORATION**

                                   By: _Betsy Hz_

                                   Printed Name: _Betsy Harrison_

                                   Title: _Sr Director, Benefits_

**TABLE OF CONTENTS**

Page

ARTICLE I — DEFINITIONS AND CONSTRUCTION ...................................................... 1
   1.1    Definitions........................................................................................................... 1
   1.2    Number and Gender ............................................................................................. 10
   1.3    Miscellaneous Construction ................................................................................. 10
   1.4    Reference to Plan Includes Component Programs .............................................. 10
   1.5    Incorporation of Component Programs ................................................................ 10
   1.6    Inconsistent Provisions in Component Program Documents ................................ 10
   1.7    Effect Upon Other Plans ...................................................................................... 10
   1.8    Jurisdiction .......................................................................................................... 10
   1.9    Severability ......................................................................................................... 10

ARTICLE II — ESTABLISHMENT AND PURPOSE ........................................................ 12
   2.1    Establishment and Purpose ................................................................................. 12
   2.2    Intention to be Welfare Benefit Plan ..................................................................... 12
   2.3    Intention to be Cafeteria Plan .............................................................................. 12

ARTICLE III — PARTICIPATION ....................................................................................... 13
   3.1    Commencement of Participation ........................................................................... 13
   3.2    Enrollment in Component Programs ..................................................................... 13
   3.3    Amending or Changing Coverage; Re-enrollment................................................. 13
   3.4    Termination of Participation .................................................................................. 13
   3.5    Dependent Coverage............................................................................................ 14
   3.6    Participation While on Leave ................................................................................ 14
   3.7    Enrollment Without Regard to Medicaid or Medicare Eligibility ............................ 17
   3.8    Special Requirements for Health Care Components.............................................. 17
   3.9    Correction of Coverage or Enrollment Error ........................................................ 18

ARTICLE IV — CAFETERIA PLAN PROVISIONS........................................................... 19
   4.1    Election of Cash or Qualified Benefits.................................................................. 19
   4.2    Annual Election Procedure ................................................................................... 20
   4.3    Election Changes by Daily Administrator .............................................................. 21
   4.4    Election Revocation and Changes by Participants During the Plan Year .............. 21
   4.5    Automatic Termination of Election ........................................................................ 25
   4.6    Maintenance of and Adjustments to Spending Accounts....................................... 25
   4.7    Limitation of Article .............................................................................................. 26

ARTICLE V — COBRA ...................................................................................................... 27
   5.1    Continuation of Coverage .................................................................................... 27
   5.2    Qualifying Event and Loss of Coverage ............................................................... 27
   5.3    Qualified Beneficiaries ......................................................................................... 28
   5.4    Notice Requirements ............................................................................................ 28
   5.5    Election Requirements.......................................................................................... 30
   5.6    Cost of Coverage ................................................................................................. 31
   5.7    Period of Coverage.............................................................................................. 31
   5.8    Termination of Coverage ..................................................................................... 32
   5.9    Rights and Obligations of COBRA Beneficiary...................................................... 33
   5.10   Applicability of Article .......................................................................................... 34
   5.11   Statutory Conflict ................................................................................................. 34

**ARTICLE VI — HEALTH CARE SPENDING ACCOUNT** .................................................**35**
6.1     Establishment of Plan ........................................................................35
6.2     Limitation on Allocations ....................................................................35
6.3     Nondiscrimination Requirements ........................................................35
6.4     Coordination With Cafeteria Component Program ...............................35
6.5     Health Care Spending Account Claims ...............................................36

**ARTICLE VII — DEPENDENT DAY CARE SPENDING ACCOUNT** ........................**38**
7.1     Establishment of Account ..................................................................38
7.2     Limitation on Allocations ....................................................................39
7.3     Nondiscrimination Requirements ........................................................39
7.4     Coordination With Cafeteria Component Program ...............................39
7.5     Dependent Day Care Spending Account Claims...................................40
7.6     Statement of Benefits ........................................................................42

**ARTICLE VIII — HEALTH SAVINGS ACCOUNTS** ................................................**43**
8.1     Establishment of Health Savings Account...........................................43
8.2     Contributions to Health Savings Account ............................................43
8.3     Distributions from Health Savings Account .........................................43
8.4     Responsibilities of HSA Eligible Participant.........................................44

**ARTICLE IX — HEALTH REIMBURSEMENT ACCOUNT PROGRAM**....................**45**
9.1     Establishment of Plan ........................................................................45
9.2     Definitions.........................................................................................45
9.3     Health Reimbursement Accounts ........................................................46
9.4     Employer Contributions .....................................................................46
9.5     Amount Allocated to the Health Reimbursement Account Program ........46
9.6     Coordination of Payment ...................................................................46
9.7     Carryover of Unused Balance .............................................................47
9.8     Forfeitures ........................................................................................47
9.9     Nondiscrimination Requirements ........................................................47
9.10    Coordination with Plan Document .......................................................47
9.11    Health Reimbursement Account Claims................................................47
9.12    Participant Account Statements ..........................................................48

**ARTICLE X —  SUBROGATION**..........................................................................**49**
10.1    Plan's Right of Subrogation or Reimbursement....................................49
10.2    Plan's Lien Rights..............................................................................49
10.3    Amounts Recoverable ........................................................................49
10.4    Limitation on Plan's Recovery ............................................................50
10.5    Enforcement .....................................................................................50
10.6    Obligations of Participants .................................................................50
10.7    Jurisdiction .......................................................................................52
10.8    Assignment.......................................................................................52
10.9    Waiver ..............................................................................................52
10.10   Coordination with Component Program Document and Other Insurance.............52

**ARTICLE XI — CLAIMS PROCEDURE** .................................................................**53**
11.1    Claims For Benefits ...........................................................................53
11.2    Binding Arbitration ............................................................................55
11.3    Payment of Benefits...........................................................................56

11.4 Authorized Representatives................................................................................57
11.5 Compromise of Claims .....................................................................................57
11.6 Limitations Period on Actions Against the Plan ...............................................57

**ARTICLE XII — FUNDING OF PLAN**................................................................................**58**
12.1 Source of Benefits ...........................................................................................58
12.2 HMO and PPO Insurance Premiums ................................................................58
12.3 Participant Contributions..................................................................................58

**ARTICLE XIII — ADMINISTRATION OF PLAN** ................................................................**60**
13.1 Plan Administrator ...........................................................................................60
13.2 Membership of the Committee..........................................................................60
13.3 Appointment Authority of Committee ................................................................60
13.4 Discretion to Interpret Plan ..............................................................................60
13.5 Powers and Duties...........................................................................................60
13.6 Committee Procedure.......................................................................................61
13.7 Compensation of Committee and Plan Expenses .............................................62
13.8 Resignation and Removal of Members .............................................................62
13.9 Committee Membership Changes......................................................................62
13.10 Records ...........................................................................................................62
13.11 Reliance Upon Documents and Opinions .........................................................62
13.12 Requirement of Proof.......................................................................................63
13.13 Reliance on Committee Memoranda..................................................................63
13.14 Multiple Fiduciary Capacity .............................................................................63
13.15 Indemnification ................................................................................................63
13.16 Bonding ...........................................................................................................63
13.17 Administrative Provider ....................................................................................64
13.18 Plan Design .....................................................................................................64
13.19 Investment Manager ........................................................................................65

**ARTICLE XIV — MANAGEMENT OF FUNDS** ..................................................................**66**
14.1 Establishment of Trust.....................................................................................66
14.2 Powers and Duties...........................................................................................66
14.3 Funding Policy and Method ..............................................................................66
14.4 Management of Assets .....................................................................................66
14.5 Mistake of Fact Contributions ..........................................................................66

**ARTICLE XV — RESTRICTIONS REGARDING PROTECTED HEALTH INFORMATION** ......**67**
15.1 Purpose of Article ...........................................................................................67
15.2 Scope of Article ...............................................................................................67
15.3 Provision of PHI to the Company Pursuant to an Authorization..............................67
15.4 Provision of SHI or Enrollment Information to the Company .....................................67
15.5 General Provision of PHI to the Company .........................................................68
15.6 Adequate Separation .......................................................................................69
15.7 Privacy Officer .................................................................................................70
15.8 Contact Person.................................................................................................71
15.9 Disciplinary Proceedings..................................................................................71
15.10 Implementation Authority .................................................................................72
15.11 Indemnification ................................................................................................73

**ARTICLE XVI – SECURITY OF ELECTRONIC PROTECTED HEALTH INFORMATION ........74**
16.1    Purpose of Article ...............................................................................74
16.2    Scope of Article .................................................................................74
16.3    Implementation of Security Standards ..................................................74
16.4    Provision of Electronic Protected Health Information to the Company ...................75
16.5    Implementation of Administrative Safeguards .........................................76
16.6    Implementation of Physical Safeguards ................................................77
16.7    Implementation of Technical Safeguards ..............................................77
16.8    Implementation of Policies and Procedures and Documentation Requirements.......78
16.9    Security Officer .................................................................................79
16.10   Implementation Authority ...................................................................79
16.11   Indemnification .................................................................................79

**ARTICLE XVII — FMLA COVERAGE .......................................................80**
17.1    FMLA Compliance .............................................................................80

**ARTICLE XVIII — USERRA.....................................................................81**
18.1    USERRA Compliance.........................................................................81

**ARTICLE XIX — AMENDMENT AND TERMINATION OF PLAN............................82**
19.1    Right to Amend .................................................................................82
19.2    Right to Terminate; Automatic Termination............................................82
19.3    Effect of Amendment or Termination.....................................................82
19.4    Merger or Consolidation.....................................................................82

**ARTICLE XX — MISCELLANEOUS PROVISIONS.........................................83**
20.1    No Guarantee of Employment .............................................................83
20.2    Assignment and Payment of Benefits ...................................................83
20.3    Payments to Minors and Incompetents .................................................83
20.4    No Vested Right to Benefits.................................................................83
20.5    Non-alienation of Benefits...................................................................83
20.6    Unknown Whereabouts ......................................................................84
20.7    Notice and Filing...............................................................................84
20.8    Incorrect Information, Fraud, Concealment, or Error................................84
20.9    Medical Responsibilities.....................................................................85
20.10   Reimbursement of Company for Excess Benefit Payment........................85
20.11   Electronic Administration ...................................................................85
20.12   Required Documentation ....................................................................85
20.13   No Reliance .....................................................................................86
20.14   Execution of Receipts and Releases ...................................................86
20.15   No Conversion Privilege .....................................................................86
20.16   Addresses, Notices, Waiver or Notice...................................................86
20.17   Entire Plan.......................................................................................86

**APPENDIX A TENET EMPLOYEE BENEFIT PLAN .......................................A-1**

**APPENDIX B TENET  IMPORTANT — ACTION NEEDED...............................B-1**

**APPENDIX C TENET EMPLOYEE BENEFIT PLAN .......................................C-1**

## ARTICLE I — DEFINITIONS AND CONSTRUCTION

**1.1    Definitions**

The following terms have the respective meanings set forth below, unless the context clearly indicates otherwise:

(a)    **AD&D Benefit Program**:  The Component Program providing accidental death and dismemberment benefits to Covered Persons.

(b)    **Administrative Agreement**:  The agreement entered into with each individual or entity providing administrative services with respect to one or more Component Programs.

(c)    **Administrative Provider**:   Any individual or entity operating under an Administrative Agreement to provide administrative services with respect to any benefits offered under one or more of the Component Programs.

(d)    **Affiliate**:  Any entity that is a member of the same group of affiliated entities as the Company within the meaning of sections 414(b), (c) or (m) of the Code except that for purposes of this definition 51 percent will be substituted for 80 percent.

(e)    **Approved HSA Vendor**:  An HSA vendor that has been approved by the Company to market HSA products to its employees and to receive employer HSA contributions, if any, and employee pre-tax HSA contributions made through the Cafeteria Program.  Notwithstanding the foregoing, an HSA Eligible Participant may transfer, at any time, his or her HSA account balance to an HSA vendor that is not an Approved HSA Vendor (but any future employee health savings account contributions made by or on behalf of such HSA Eligible Participant to a health savings account maintained by a vendor that is not an Approved HSA Vendor must be made on after-tax basis and not pre-tax through the Cafeteria Program).

(f)    **Business Associate**:  An individual who or entity that, other than an Employee of the Company or a Participating Employer, provides services to the Health Care Components of the Plan, such as an Administrative Provider, COBRA vendor or utilization review organization.

(g)    **Business Travel Accident Benefit Program**:   The Component Program providing business travel accident benefits to Covered Persons.

(h)    **Cafeteria Component Program**:   Each Component Program in which Participants pay for benefits on a pre-tax basis or an after-tax basis pursuant to section 125 of the Code.  Specifically, the Cafeteria Component Programs are: (i) the Medical Benefit Program, (ii) the Dental Benefit Program, (iii) the Vision Benefit Program, (iv) the Prescription Drug Program; (v) the Health Care Spending Account Program, (vi) the Dependent Day Care Spending Account Program, (vii) the Health Reimbursement Account Program, and (iix) any Health Savings Accounts established by HSA Eligible Participants.  As required by COBRA, FMLA, USERRA or other applicable law, Participants may pay for benefits under the Cafeteria Component Programs on an after-tax basis as provided in this Plan.  In addition, Participants will pay for benefits under the

Disability Benefit Program on an after-tax basis under this Plan, which may be through the Cafeteria Component Program.  Participants will pay for benefits under the AD&D Benefit Program, Life Benefit Program and Long Term Care Benefit Program on an after-tax basis under this Plan, which will be made outside of the Cafeteria Component Program.

(i)  **Child or Children**:  The child (or children) of an Employee who is (or are) eligible to participate in a Component Program.

(j)  **COBRA**:  The Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, and any regulations or rulings issued thereunder.

(k)  **COBRA Beneficiary**:  Each (i) qualified beneficiary within the meaning of Section 5.3 who has elected continuation of coverage pursuant to Article V and thereby is covered under the Plan, (ii) qualified beneficiary who has elected continuation of coverage pursuant to the COBRA provisions set forth in a Component Program Document and thereby is covered under the Plan, and (iii) other individual covered under the Plan pursuant to Section 5.9(a).

(l)  **Code**:  The Internal Revenue Code of 1986, as amended, and any regulations or rulings issued thereunder.

(m)  **Committee**:  The Tenet Benefits Administration Committee, which is the "Plan Administrator" of the Plan as provided in Section 13.1.

(n)  **Company**:  Tenet Healthcare Corporation. For purposes of Articles XV and XVI regarding the HIPAA privacy and security requirements, the term "Company" also includes any Affiliate that has adopted the Plan as a Participating Employer.

(o)  **Compensation**:  Unless otherwise specifically provided in a Component Program, the total of all wages, salaries, fees, and other amounts that are paid by the Employer to or for the benefit of a Participant for services performed for the Employer, which are required to be reported on the Participant's federal income tax withholding statement (Form W-2).

(p)  **Component Program**:  A benefit program selected by the Company and listed in Appendix A to the Plan.  The types and/or terms of the Component Programs may be revised from time to time without the need for a formal amendment to the Plan in which case a revised Appendix A will be attached hereto.

(q)  **Component Program Document**:  The written documents (*i.e.*, insurance policies, HMO contracts, summary plan descriptions, pamphlets and brochures) setting forth the terms of the applicable Component Program, the provisions of which are incorporated herein by this reference.

(r)  **Condition**:  Any sickness, injury, or other mental or physical malady that may give rise to the payment of benefits under the Plan.

(s)  **Contact Person**:  The person appointed to serve as the HIPAA privacy contact person pursuant to the Privacy Manual for purposes of inquiries and complaints.

(t)   **Covered Dependent**:  Each Dependent who is covered under the Plan pursuant to Section 3.5.

(u)   **Covered Person**:   Each Participant, Covered Dependent, and COBRA Beneficiary.  For purposes of Article XV and XVI regarding HIPAA, "Covered Person" means an employee, spouse, or dependent that is enrolled in one or more of the Health Care Components.

(v)   **Daily Administrator**:  The Health and Welfare Department of the Company which is responsible for the day-to-day administration of the Plan.  The Director of Benefits for the Company, and effective October 16, 2017, Vice President, Total Rewards and Workforce Analytics for the Company, are each authorized to enter into and execute documents on behalf of the Daily Administrator.

(w)   **Dental Benefit Program**:  The Component Program providing group dental benefits to Covered Persons.

(x)   **Dependent**:  Each (i) Spouse of a Participant, (ii) Child of a Participant, (iii) Domestic Partner of a Participant, and (iv) other dependent of a Participant within the meaning of section 152 of the Code who is eligible for coverage under a Component Program; provided, however, that the definition of "Dependent" will be modified as necessary to conform with the underlying section applicable to each Component Program, as applicable.  For instance, for purposes of the Health Care Components, whether a person is a dependent under section 152 of the Code will be determined without regard to sections 152(b)(1) and (b)(2) of the Code, which contain certain exceptions to the definition of dependent, and without regard to section 152(d)(1)(B) of the Code, which contains a gross income limitation for a qualifying relative.  Additionally, effective January 1, 2011, a Dependent under the Medical Benefit Program and the Health Care Spending Account Program will include a "child" as described in section 152(f)(1) of the Code under the age of 26.

(y)   **Dependent Day Care Spending Account**:  The Tenet Healthcare Corporation Dependent Day Care Spending Account, which is a Component Program providing Spending Accounts for reimbursement of dependent-care expenses, pursuant to sections 125 and 129 of the Code, but will not be a separate fund or otherwise a segregation of assets, merely a record-keeping account.

(z)   **Disability Benefit Program**:  The Component Program providing short-term and long-term disability benefits to Covered Persons.

(aa)  **Domestic Partner**:  A person of the same or opposite sex as the Participant who has entered into a domestic partnership with the Participant that satisfies the "Criteria for Domestic Partnership Status" attached hereto as Appendix B. Appendix B may be revised from time to time without the need for formal amendment to the Plan, in which case a revised Appendix B will be attached hereto

(bb)  **Effective Date**:  January 1, 2020, except as otherwise stated herein or required by law.

(cc)   **Electronic Media**: For purposes of the HIPAA Security Standards:

    (i)    Electronic storage media including memory devices in computers (hard drives) and any removable/transportable digital memory medium, such as magnetic tape or disk, optical disk, or digital memory card; or

    (ii)    Transmission media used to exchange information already in electronic storage media. Transmission media include, for example, the internet (wide-open), extranet (using internet technology to link a business with information accessible only to collaborating parties), leased lines, dial-up lines, private networks, and the physical movement of removable/transportable electronic storage media. Certain transmissions, including of paper, via facsimile, and of voice, via telephone, are not considered to be transmissions via electronic media, if the information being exchanged did not exist in electronic form before the transmission.

(dd)   **Electronic Protected Health Information or ePHI**: PHI that is created, received, maintained or transmitted in Electronic Media by or on behalf of the Plan.

(ee)   **Employee**: Each individual employed or formerly employed by the Employer or each individual who is a current or former member of the Company's Board of Directors who is eligible for coverage under a Component Program; provided, however, that "Employee" will not include any employee:

    (i)    who is a leased employee within the meaning of section 414(n) of the Code or is determined by the Employer to be an independent contractor (even if such leased employee or independent contractor is subsequently determined by the Internal Revenue Service, the Department of Labor, a court of competent jurisdiction or the Employer to be a common law employee of the Employer); or

    (ii)    whose terms and conditions of employment are governed by a collective bargaining agreement unless the agreement provides for his coverage under the Plan.

Service or employment completed by an Employee of an acquired facility or an acquired employee group before such facility or group became an Affiliate or part of an Affiliate will be taken into account for purposes of the Plan to the extent provided in the acquisition agreement or similar document, including payroll records. Likewise, service or employment completed by an Employee who was part of an outsourced function, department or group, that is reassumed by the Employer or an Affiliate will be taken into account for purposes of the Plan.

(ff)   **Employee Assistance Program**: The Component Program providing employee assistance benefits to Covered Persons.

(gg)   **Employer**: The Company and each Participating Employer.

(hh)   **ERISA**: The Employee Retirement Income Security Act of 1974, as amended and any regulations or rulings issued thereunder.

(ii) **FMLA**:  The Family and Medical Leave Act of 1993, as amended, and any regulations or rulings issued thereunder.

(jj) **FMLA Coverage**:  Coverage under a Health Care Component during an FMLA Leave.

(kk) **FMLA Leave**:  A leave of absence taken pursuant to the FMLA.

(ll) **GINA**:  the Genetic Information Nondiscrimination Act of 2008 as it may be amended from time to time, and any regulations or rulings issued thereunder.

(mm) **Health Care Components**:  The designated health care components of the Plan, which consist of the following group health plans within the meaning of section 5000(b)(1) of the Code or section 607(1) of ERISA: (i) the Medical Benefit Program component (includes all insured and self-funded medical benefits provided), (ii) the Dental Benefit Program component, (iii) the Vision Benefit Program component, (iv) the Prescription Drug Program, (v) the Health Reimbursement Account Program, and (vi) the Health Care Spending Account component.  In addition, the term "Health Care Components" includes any other component that is offered under the Plan that provides "health care" within the meaning of HIPAA, including (i) the Long-Term Care Benefit Program component, (ii) the Employee Assistance Program component, and (iii) any Voluntary Benefit Program component providing health care.

(nn) **Health Care Reform**:  The Patient Protection and Affordable Care Act of 2010 and the Health Care and Education Reconciliation Act of 2010, and any regulations or rulings issued thereunder.

(oo) **Health Reimbursement Account Program**:  The Tenet Healthcare Corporation Health Reimbursement Account Program, which is a Component Program providing Health Reimbursement Accounts for reimbursement of medical expenses, pursuant to sections 105 and 106 of the Code, but will not be a separate fund or otherwise a segregation of assets, but merely a record-keeping account.

(pp) **Health Savings Account or HSA**:  A "health savings account" within the meaning of section 223(d) of the Code that is established or maintained by an HSA Eligible Participant and provided by an Approved HSA Vendor.

(qq) **Health Care Spending Account**:  The Tenet Healthcare Corporation Health Care Spending Account, which is a Component Program providing Spending Accounts for reimbursement of medical expenses, pursuant to sections 125 and 105(b) of the Code, but will not be a separate fund or otherwise a segregation of assets, but merely a record-keeping account.

(rr) **HIPAA**:  The Health Insurance Portability and Accountability Act of 1996, as may be amended from time to time.  The privacy requirements of HIPAA with respect to the Plan are set forth in Article XV.  The security requirements of HIPAA are set forth in Article XVI.

(ss) **HIPAA Regulations**:  The regulations promulgated pursuant to HIPAA with respect to the privacy and security of PHI as set forth in 45 C.F.R. Parts 160 and

164 as in effect or as amended from time to time.  A reference to a section of the HIPAA Regulations will include such section as it may be subsequently amended or renumbered from time to time.  Further, certain capitalized terms used in this Article or in Article XV and Article XVI that are not defined herein will have the meaning ascribed to such terms under the HIPAA Regulations.

(tt) **HMO**:  Any health maintenance organization or similar organization or network of individuals or organizations that has contracted to provide medical, mental, and/or other health-related benefits to Participants and Covered Dependents.

(uu) **HSA Eligible Participant**:  A Participant in a Medical Benefit Program option that is a "high deductible health plan" within the meaning of Code section 223(c)(2) and who is an "eligible individual" within the meaning of Code section 223(c)(1).

(vv) **Information System**:   For purposes of the HIPAA Security Standards, an interconnected set of information resources under the same direct management control that shares common functionality.  A system normally includes hardware, software, information, data, applications, communications, and people.

(ww) **Insurer**:  Any insurance company that has contracted to provide benefits under a Component Program.

(xx) **Life Benefit Program**:   The Component Program providing life insurance benefits to Covered Persons.

(yy) **Long-Term Care Benefit Program**:  The Component Program providing long-term care insurance benefits to Covered Persons.

(zz) **Major Life Event**:  May include any of the following events as specified in the Component Program Document:

(i)  Events that change an Employee's legal marital status, including marriage, death of Spouse, divorce, legal separation, or legal annulment;

(ii)  Events that change an Employee's number of Children, including birth, adoption, placement for adoption, or death of a Child;

(iii)  A termination or commencement of employment or a change in employment status of the Employee, Spouse or Child;

(iv)  A reduction or increase in hours of employment by the Employee, Spouse, or Child, including a switch between part-time and full-time status, a strike or lockout, or a commencement or return from an unpaid leave of absence;

(v)  An event that causes a Dependent to satisfy or cease to satisfy the requirements for coverage due to attainment of age, student status, or any similar circumstance as may be provided in the applicable Component Program;

(vi)  A change in the place of residence or work of the Employee, Spouse, or Child that results in a gain or loss of coverage under a Component Program;

(vii)    The loss of health coverage or addition of a Dependent which gives rise to the special enrollment rights provided in section 9801(f) of the Code;

(viii)    An election change made by the Spouse, former Spouse or Child under another employer-sponsored plan, including an annual enrollment election or a permissible change in status election under such plan that results in a gain or loss of coverage under such plan;

(ix)    With respect to an election to revoke coverage in the Medical Benefit Program only, a reasonably expected reduction in hours of the Employee below 30 hours per week on average, regardless of whether such reduction would result in a loss of coverage under the Medical Benefit Program, provided, that the Employee expresses his intent to enroll himself and his Dependents who lose coverage under the Medical Benefit Program, in health coverage under the health insurance market place exchange with such coverage becoming effective no later than the first day of the second month following the month that includes the date that coverage in the Medical Benefit Program is revoked; or

(x)    With respect to an election to revoke coverage in the Medical Benefit Program, an annual or special enrollment period under the health insurance market place exchange where the Employee reasonably expresses his intent to enroll himself and his Dependents who lose coverage under the Medical Benefit Program in health coverage under the health insurance market place exchange with such coverage becoming effective no later than the day immediately following the day that coverage in the Medical Benefit Program is revoked.

(aaa)  **Medical Benefit Program**:  The Component Program providing group medical benefits to Covered Persons.  As of the Effective Date, separate Medical Benefit Programs are maintained by the Company and all Participating Employers except Conifer Holdings, Inc. and by Conifer Holdings, Inc.

(bbb)  **Medicare**:  The medical care benefits program provided under title XVIII of the Social Security Act of 1965, as amended.

(ccc)  **Mental Health Act**:  The Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008, as it may be amended from time to time, and any regulations or rulings issued thereunder.

(ddd)  **Michelle's Law**:  Public Law 110-381 as it may be amended from time to time, and any regulations or rulings issued thereunder.

(eee)  **Non-Health Care Components**:  The non-health care components of the Plan which consist of (i) the Disability Benefit Program component, (ii) the Dependent Day Care Spending Account component, (iii) the AD&D Benefit Program component, (iv) the Life Benefit Program component, (v) the Business Travel Accident Benefit Program component, and (vi) the Supplemental Income Protection Program.

(fff)  **Participant**:  Each Employee who is a participant in the Plan pursuant to Article III.

(ggg) **Participating Employer**: Any Affiliate of the Company that has adopted all or a portion of the Plan. Unless specified otherwise by a resolution of the Committee or other written instrument, such as an acquisition or similar agreement, each 80% or more owned Affiliate will automatically become a Participating Employer in this Plan and the Component Programs. Each less than 80% owned Affiliate but 51% or more owned Affiliate will become a Participating Employer in this Plan to the extent the Company determines to offer the Plan to such Affiliate's employees. For this purpose any such Affiliate's commencement of pre-tax contributions or after-tax contributions on behalf of its Employee-Participants will evidence its formal adoption of the Plan. A Participating Employer may terminate its participation in this Plan and/or any of the Component Programs by written notice to the Company. Likewise, the Company may terminate a Participating Employer's participation in this Plan and/or any of the Component Programs at any time by written notice to such Employer.

A list of the 80% or more owned Affiliates who do not participate in the Plan is set forth in Appendix C. Appendix C may be revised from time to time without the need for a formal amendment to the Plan in which case a revised Appendix C will be attached hereto.

(hhh) **Prescription Drug Program**: The Component Program providing prescription drugs to Covered Persons.

(iii) **Plan**: The Tenet Employee Benefit Plan which sets forth the single administrative document that governs administration of the benefits provided through the Component Programs.

(jjj) **Plan Administrator**: The plan administrator appointed pursuant to section 13.1 of the Plan. As of the Effective Date, the Committee is the Plan Administrator.

(kkk) **Plan Year**: The calendar year.

(lll) **PPO**: Any preferred provider organization or other similar organization or arrangement with which the Employer has contracted to provide medical, mental, and/or other health-related benefits—including dental, vision, or prescription drug benefits—for Participants and Covered Dependents.

(mmm) **Privacy Manual**: The Company's Protected Health Information Policies and Procedures Manual.

(nnn) **Privacy Officer**: The individual or entity appointed to serve as the Plan's Privacy Officer pursuant to the Privacy Manual.

(ooo) **Privacy Rules**: The rules pertaining to privacy of Protected Health Information set forth in subpart E of part 164 of the HIPAA Regulations.

(ppp) **Protected Health Information or PHI**: Individually identifiable health information which is protected pursuant to HIPAA and the HIPAA Regulations.

(qqq) **Spending Accounts**: The Dependent Day Care Spending Account and the Health Care Spending Account.

(rrr) **Security Incident**:  The attempted or successful unauthorized access, use, disclosure, modification, or destruction of information or interference with system operations in an Information System.

(sss) **Security Manual**:  The Company's Electronic Protected Health Information Security Policies and Procedures.

(ttt) **Security or Security Measures**:  All Administrative, Physical and Technical Safeguards in an Information System.

(uuu) **Security Officer**:  The individual or entity appointed to serve as the Plan's Security Officer pursuant to Section 16.9 of the Plan.

(vvv) **Security Standards**:  The security standards set forth in sections 164.306 (regarding general security standards), 164.308 (regarding Administrative Safeguards), 164.310 (regarding Physical Safeguards), 164.312 (regarding Technical Safeguards), 164.314 (regarding organizational requirements), and 164.316 (regarding policies and procedures and documentation requirements) of the HIPAA Regulations, individually or collectively, as the context requires.

(www) **SHI**:  Summary health information (i.e. information that summarizes the claims history, claims expense or type of claims experienced by Covered Persons under the Plan) as such term is described in section 164.504 of the HIPAA Regulations.

(xxx) **Spouse**:  The legal spouse of an Employee, including a common law spouse or a same-sex spouse.

(yyy) **Supplemental Income Protection Program**:   The Component Program providing supplemental income protection benefits to Covered Persons.

(zzz) **Third Party**:  Any individual who or entity that may be liable to a Covered Person for a Condition or for payment of damages or expenses related to a Condition. This term includes,  but is not limited to, first-party automobile insurance coverage such as personal-injury-protection/medical coverage, liability coverage, personal umbrella coverage, medical payments coverage, workers compensation coverage, no fault automobile coverage, uninsured/underinsured motorist coverage, or any first party insurance coverage of the Covered Person.

(aaaa) **USERRA**:  The Uniformed Services Employment and Reemployment Rights Act of 1994, as amended, and any regulations or rulings issued thereunder.

(bbbb) **USERRA Coverage**:  Coverage under a Health Care Component pursuant to USERRA

(cccc) **USERRA Leave**:  A leave of absence taken pursuant to USERRA

(dddd) **Vision Benefit Program**:  The Component Program providing group vision benefits to Covered Persons.

(eeee) **Voluntary Benefit Programs**:  The Component Programs providing voluntary benefit offerings that may be elected by eligible Employees.  As of the Effective

Date, the Voluntary Benefit Programs include accident-only insurance, critical illness insurance and Hyatt legal services.

(ffff)   **Workforce**:  Employees and agents of the Company who perform work for the Plan under the direct control of the Plan.

### 1.2   Number and Gender

Where appropriate, the singular includes the plural, and vice versa; and the masculine gender includes the feminine gender, and vice versa.

### 1.3   Miscellaneous Construction

The headings of Articles and Sections are solely for convenience. All references to the capitalized terms "Sections," "Articles," "Paragraphs," "Clauses" and the like are to this document unless otherwise indicated.  The terms "herein" and "hereof," as well as other similar compounds of "here," refer to the entire document and not to any particular part, unless the context clearly indicates otherwise.   The terms "includes" and "including" mean "includes but is not limited to" and "including but not limited to," respectively.

### 1.4   Reference to Plan Includes Component Programs

Any reference to the Plan includes each Component Program unless otherwise indicated.

### 1.5   Incorporation of Component Programs

The Component Programs and the Component Program Documents in their entirety are incorporated herein by reference and made a part of the Plan.

### 1.6   Inconsistent Provisions in Component Program Documents

If any provision in a Component Program Document conflicts with, contradicts, or renders ambiguous any provision in this document, the provision in this document will control unless otherwise specifically provided.

### 1.7   Effect Upon Other Plans

Except to the extent provided herein, nothing in the Plan will be construed to affect the provisions of any other plan maintained by the Employer, including a plan intended to comply with the qualification provisions of sections 401(a) and 501(a) of the Code.

### 1.8   Jurisdiction

Except to the extent ERISA or any other federal law applies to the Plan and preempts state law, the Plan will be construed, enforced, and administered according to the laws of the State of Texas.

### 1.9   Severability

If any provision of the Plan is held illegal, invalid, or unenforceable for any reason, that holding will not affect the remaining provisions of the Plan.  Instead, the Plan will be

construed and enforced as if the illegal, invalid, or unenforceable provision had not been included herein.

**End of Article I**

## ARTICLE II — ESTABLISHMENT AND PURPOSE

**2.1     Establishment and Purpose**

The Company has adopted and established the Plan for the purpose of providing the benefits under and coordinating the administration of the Component Programs, which provide certain health, accident, life, disability, and other welfare benefits for Employees and their Dependents, where applicable.

**2.2     Intention to be Welfare Benefit Plan**

The Company intends the Plan to be an employee welfare benefit plan under section 3(1) of ERISA and its regulations, to the extent the benefits provided by each Component Program so permit.  If any benefit provided under a Component Program is determined not to be a benefit eligible to constitute an employee welfare benefit plan under section 3(1) of ERISA, such a determination will not prevent the remainder of the Plan from qualifying as an employee welfare benefit plan within the meaning of such section.  Notwithstanding the foregoing, the Dependent Day Care Spending Account Program, the cafeteria plan, and any Health Savings Account established by an HSA Eligible Participant will not be considered an employee welfare benefit plan within the meaning of section 3(1) of ERISA and the regulations (unless such a determination is required by such regulations or by other Department of Labor guidance).

**2.3     Intention to be Cafeteria Plan**

The Company intends the Plan to provide Employees a choice between taxable compensation (cash) and benefits with respect to the Cafeteria Component Programs. The Company intends the Plan to qualify as a "cafeteria plan" under section 125 of the Code as to the Cafeteria Component Programs.  In no event will the Plan be administered or construed to constitute a plan of deferred compensation.  The cafeteria-plan provisions under this Plan are intended to be severable.  If the Plan is determined to be discriminatory within the meaning of section 125 of the Code, then only the Cafeteria Component Programs will be affected thereby.

_____

End of Article II

## ARTICLE III — PARTICIPATION

### 3.1    Commencement of Participation

Each Employee will become a Participant in the Plan coincident with the date the Employee becomes enrolled in and covered under one or more of the Component Programs.  By becoming a Participant in a Component Program under the Plan, an eligible person will for all purposes be deemed conclusively to have assented to the terms and conditions of this Plan and each applicable Component Program.

### 3.2    Enrollment in Component Programs

Rules of eligibility, enrollment, coverage, and termination of coverage vary for each Component Program and are set forth in the respective Component Program Documents.  Enrollment and coverage in a Component Program will be subject to any required premium payment applicable to such coverage and to all other terms and conditions set forth in the applicable Component Program Document.

Under each Component Program, different benefits may be provided with respect to different Employee categories or portions of such Employee categories, and neither the Plan nor the Company will be under any obligation to provide comparable benefits, in the aggregate or on a benefit-by-benefit basis, with respect to such separate Employee categories or portions of such Employee categories.   Nothing in this Plan will be construed or applied to indicate that each Component Program is applicable to each Employee category hereunder, or to all persons assigned to each Employee category.

Notwithstanding any other provision of this Section 3.2 or the terms and conditions of an applicable Component Program Document, an Employee must complete any applicable enrollment forms, dependent verification forms and provide all necessary information (e.g., Social Security Numbers) required for participation in, and coverage under, a Component Program.  Enrollment in a Component Program will not be effective unless and until all required forms and information have been timely provided, and may be suspended in the event that an Employee fails to provide necessary information or forms with respect to his coverage or that of an eligible Dependent, until such information or forms have been provided to the Daily Administrator.

### 3.3    Amending or Changing Coverage; Re-enrollment

Participants may amend or change coverage under a Component Program, or, where applicable, re-enroll in a Component Program, only when and as permitted herein or by the applicable Component Program.

### 3.4    Termination of Participation

Except as otherwise specifically provided by the Plan, a Participant will cease to participate in the Plan when any one of the following occurs:

(a)     the date the Participant is no longer enrolled in and covered under at least one Component Program;

(b)     the date the Participant fails to qualify as an Employee or the date the Participant loses coverage under all Component Programs as a result of his failure to qualify as an Employee, whichever is later; subject to the provisions of COBRA; or

(c)     the effective date of termination of the Plan.

If a Participant ceases to participate in the Plan, he will be entitled to resume participating in accordance with Section 3.1.   A transfer of employment among the Company and Participating Employers will not be considered as a termination of employment for purposes of the Plan.

## 3.5     Dependent Coverage

(a)     **Commencement of Participation**.  Each Dependent will become a Covered Dependent under the Plan coincident with the date the Dependent becomes enrolled in and covered under at least one Component Program.

(b)     **Enrollment in Component Programs**.  Rules of eligibility, enrollment, coverage, and termination of coverage for Dependents in a Component Program vary for each Component Program and are set forth in the respective Component Program Documents.

(c)     **Termination of Participation**.   Plan coverage for a Participant's Covered Dependent will terminate when any one of the following occurs:

(i)      the date the Dependent is no longer enrolled in and covered by at least one of the Component Programs;

(ii)     the date the Covered Dependent ceases to qualify as a Dependent;

(iii)    the date the Participant ceases to be enrolled in and covered under at least one Component Program covering the Covered Dependent; or

(iv)    the effective date of termination of the Plan.

If coverage for a Covered Dependent terminates, he will be entitled to resume coverage in accordance with Paragraph (a) above.

(d)     **QMCSOs**.  Notwithstanding Paragraphs (a), (b), and (c) above, each Component Program that is a group health plan within the meaning of section 607(1) of ERISA (*i.e.,* the Medical Benefit Program component (includes all insured and self-funded medical benefits provided), the Dental Benefit Program component, the Vision Benefit Program component, and  the Health Care Spending Account component) will comply with a "qualified medical child support order" or "QMCSO" within the meaning of section 609 of ERISA, but only to the extent required by and under the conditions specified in section 609 of ERISA. The Daily Administrator will establish such rules and procedures regarding such orders, as is required by ERISA.

## 3.6     Participation While on Leave

(a)     **FMLA and USERRA Leave**.  To the extent required by FMLA or USERRA, a Participant may elect to continue coverage under a Health Care Component that

is subject to the FMLA or USERRA, as applicable, during his leave. A Participant who elects such continuation is responsible for paying his share of the contributions for that coverage during the leave, and the Employer is obligated to pay its share during the leave. Further, to the extent permitted by the Component Program, a Participant may elect to continue all or a portion of his coverage under a contributory non Health Care Component during FMLA Leave or USERRA Leave. A Participant who desires to continue such other coverage must agree to pay his share of the contributions for such other coverage during the leave under one of the options described in this Section 3.6, to the extent such option is permitted by the terms of the Component Program, and the Employer is obligated to pay its share during the leave (unless provided otherwise in the Component Program Document).

The payment options available to a Participant during FMLA Leave or USERRA Leave are:

(i)     **Paid Leave**. If the FMLA Leave or USERRA Leave is a paid leave and the Participant elects to continue his coverage, the Participant's contributions will continue to be paid by the method used prior to the leave.

(ii)    **Unpaid leave**. If the FMLA Leave or USERRA Leave is an unpaid leave and the Participant elects to continue his coverage, the Participant may, to the extent permitted by the Component Program, elect to pay his contributions under any of the following options:

(A)    **Pre-pay Option**. The Participant may elect to pay his contributions prior to going on the leave. Contributions under the pre-pay option may be made on either a pre-tax or after-tax basis, as elected by the Participant.

(B)    **Pay-as-you-Go Option**. The Participant may elect to pay his contributions during the leave either on the same schedule as payments would be made if the Participant were not on leave, on the schedule applicable to COBRA premiums, or on any other schedule the Employer may establish consistent with regulations issued under the FMLA. Contributions under the pay-as-you-go option will be made on an after-tax basis.

(C)    **Catch-up Option**. The Participant may elect with the consent of the Employer, which consent will be granted on a non-discriminatory basis, to continue his benefits during the period of leave and, upon his return from the leave, to reduce his future Compensation in an amount sufficient to pay the contributions incurred during such leave. Payments under this catch-up option may be made with either pre-tax or after-tax dollars, as elected by the Participant.

With respect to Cafeteria Component Programs only, if the FMLA Leave or USERRA Leave will span two different Plan Years, the Participant may not elect the pre-pay option for that portion of the FMLA Leave or USERRA Leave that occurs during the next Plan Year; but, instead, must elect the pay-as-you-go

option or catch-up option for the period of FMLA Leave or USERRA Leave during the next Plan Year. The Company will be entitled to collect premiums that a Participant fails to pay in accordance with the terms of the payment option selected by such Participant to the fullest extent permitted by law.

If a Participant elects not to continue his coverage under the Health Care Spending Account Program during an FMLA leave, then upon his return from that leave, the Participant will be given the option to either (i) resume coverage at the original level and make up the unpaid premiums or (ii) resume coverage at a reduced level in which case the Participant's coverage amount under the Health Care Spending Account Program will be adjusted to reflect the period of his FMLA leave during which he did not make contributions and his premium payments will resume at the original level.

Any continued coverage provided by the Employer pursuant to this Section in the case of a FMLA Leave will be in addition to any COBRA continuation coverage the Participant and his covered Spouse and Dependents are entitled to under section 4980B of the Code, section 609 of ERISA, and Article V of this Plan. The Participant and his covered Spouse and Dependents will be provided with notice of their COBRA rights, if any, at the end of the FMLA Leave regardless of whether they elect to continue coverage pursuant to this Section 3.6(a) during such FMLA Leave. In the case of a USERRA Leave, the Participant and his covered Spouse and Dependents will be provided notice of their COBRA rights, if any, at the earlier of the date their continued coverage under this Section ends for any reason (including a failure to pay premiums) or the end of the USERRA Leave. Unless provided otherwise in the Component Program, any continued coverage provided by the Employer pursuant to this Section 3.6(a) during a USERRA Leave will be treated as, and count against, satisfaction of the COBRA continuation period applicable to the Participant and his covered Spouse and Dependents under section 4980B of the Code, section 609 of ERISA and Article V of this Plan. If the Participant does not elect to continue coverage pursuant to this Section 3.6(a), or elects to continue such coverage during such leave but ceases to pay his portion of the cost of such coverage during such leave, such Participant will be provided with notice of his COBRA rights if any.

(b)     **Non-FMLA and Non-USERRA Unpaid Leave.** A Participant's coverage under the Plan will continue during an approved unpaid leave of absence (that is not an FMLA Leave or USERRA Leave) to the extent provided in the Component Programs. A Participant may elect to continue coverage under a Health Care Component during such leave if allowed by the Component Program. A Participant who elects such continuation during a leave is responsible for paying the full contribution for the coverage during such leave, (unless provided otherwise in the Component Program Document). Further, to the extent permitted by the non-Health Care Components, a Participant may elect to continue all or a portion of his contributory coverage under such other programs during the leave. A Participant who desires to continue such other coverage must agree to pay his share of the contributions for the coverage as specified in the Component Program, and the Employer will continue to pay its share for such other coverage during the leave (unless provided otherwise in the Component Program Document).

If a Component Program does not allow a Participant's coverage to continue during an unpaid leave of absence (which does not qualify as FMLA Leave or USERRA Leave), coverage will be suspended during such unpaid leave of absence; provided, however, that the Participant and his covered Dependents (who are qualified beneficiaries within the meaning of Section 5.3) may elect, pursuant to COBRA, to continue coverage under a Health Care Component that is a group health plan within the meaning of section 5000(b)(1) of the Code or section 607(1) of ERISA (*i.e.*, the Medical Benefit Program component (includes all insured and self-funded medical benefits provided), the Dental Benefit Program component, the Vision Benefit Program component, and the Health Care Spending Account component).

A Participant who takes a paid leave of absence will not be eligible to revoke his coverage elections pursuant to this Paragraph (b); but, instead, such coverage and the associated Salary Redirections will remain in effect for the duration of such leave. The Participant may be billed separately for such coverage during such leave.

Unless provided otherwise in the Component Program, any continued coverage provided by the Employer pursuant to this Paragraph (b) will be treated as, and count against, satisfaction of the COBRA continuation period applicable to the Participant and his covered Spouse and Dependents under section 4980B of the Code, section 609 of ERISA and Article V of this Plan. If the Participant does not elect to continue coverage pursuant to this Paragraph (b), or elects to continue such coverage during such leave but ceases to pay his portion of the cost of such coverage during such leave, the Participant will be provided with notice of his COBRA rights if any, at that time.

### 3.7   Enrollment Without Regard to Medicaid or Medicare Eligibility

Except as may otherwise be required with respect to a HIPAA special enrollment event, each Health Care Component will enroll an individual in the Plan without regard to the fact the individual is eligible for or is provided (a) medical assistance under a state plan for medical assistance approved pursuant to Title XIX of the Social Security Act, or (b) benefits under Part A or B of Medicare, to the extent such Health Care Component is required to comply with such law.

### 3.8   Special Requirements for Health Care Components

To the extent required, each Health Care Component that is a group health plan within the meaning of section 9832 of the Code (*i.e.*, the Medical Benefit Program component, the Dental Benefit Program component, and the Vision Benefit Program component, unless such Component Programs are only providing limited scope dental and vision benefits) will operate in compliance with the applicable requirements of Subtitle K, Chapter 100 of the Code (*i.e.*, the special enrollment and portability requirements of section 9801 of the Code, the health status nondiscrimination requirements of section 9802 of the Code, the guaranteed renewability requirements of section 9803 of the Code, the newborns and mothers protection provisions in section 9811 of the Code, and the mental health and substance use disorder provisions of section 9812 of the Code, the coverage of dependent students on medically necessary leaves of absence of section 9813 of the Code, and the applicable mandates of Health Care Reform, as amended, of section 9815 of the Code) which provisions are hereby incorporated herein

by reference.  Compliance with the requirements of subtitle K, chapter 100 of the Code will include, without limitation, compliance with the special enrollment rules that (a) apply in the event of a Participant's acquisition of a new Dependent or the loss of group health plan or health insurance coverage by an Eligible Employee, Spouse, or Child and (b) permit an Eligible Employee and such Eligible Employee's Dependent(s) to enroll in the Plan in the event that (i) such Eligible Employee's or Dependent(s) coverage under Medicaid or a state children's health insurance program is terminated as a result of loss of eligibility, provided that such Eligible Employee requests such enrollment within 60 days after such termination of coverage and (ii) such Eligible Employee or Dependent(s) becomes eligible for a premium assistance subsidy under Medicaid or a state children's health insurance program, provided that such Eligible Employee requests such enrollment within 60 days after eligibility for such premium assistance subsidy is determined, effective April 1, 2009.

Each Health Care Component that is a group health plan within the meaning of section 733 of ERISA (*i.e.*, the Medical Benefit Program component, the Dental Benefit Program component, and the Vision Benefit Program component, unless such Component Programs are only providing limited scope dental and vision benefits) will also operate in compliance with section 713 of ERISA, regarding mandated coverage of post-mastectomy reconstructive surgery, to the extent applicable.

Each Health Care Component that is a "group health plan" within the meaning of the following laws (unless such Health Care Component is providing only excepted benefits including limited scope dental and vision benefits) will comply with the requirements of such laws, to the extent that they are applicable to the Plan:  GINA, Michelle's Law, and the Mental Health Act.

Each Health Care Component that is a "group health plan" within the meaning of Health Care Reform (unless such Health Care Component is providing only excepted benefits including limited scope dental and vision benefits) will comply with the requirements of Health Care Reform as a grandfathered or non-grandfathered plan, as such terms are defined by Health Care Reform, to the extent that such requirements are applicable to the Plan.

**3.9     Correction of Coverage or Enrollment Error**

If the Daily Administrator or Committee determines in its discretion that an error has occurred with respect to enrollment or coverage under the Plan, the Daily Administrator or Committee may correct any such error in any manner it deems appropriate; provided, however, that, to the extent any such correction is not a permissible mid-year election change in accordance with Section 4.4 and under section 125 of the Code and results in a cost increase or decrease to the affected Participant, such Participant will not be permitted to make a corresponding change to the amount of his pre-tax contributions elected for the Plan Year, and any increase in cost to such Participant resulting from such correction must be paid by the Participant on an after-tax basis.

---

End of Article III

## ARTICLE IV — CAFETERIA PLAN PROVISIONS

**4.1     Election of Cash or Qualified Benefits**

(a)     **Nature of Election.**

(i)     **General Rule.** An Employee may elect either to (A) receive his Compensation for any Plan Year in cash, or (B) participate in one or more of the Cafeteria Component Programs and have his Compensation reduced on a pre-tax basis, with the amount of such reduction applied by the Employer toward his share of the cost of benefit coverage elected by the Employee under the Cafeteria Component Programs. In addition, the Employer may elect on a nondiscriminatory basis to provide credit dollars to Employees which may be used to purchase benefits under the Cafeteria Component Programs. A Participant may also elect to purchase coverage under the Disability Benefit Program on an after-tax basis through the Cafeteria Component Program. (After-tax contributions for any other insured benefit offered through a Component Program that is not a group health plan within the meaning of section 5000(b)(1) of the Code or section 607(1) of ERISA will be made outside of the Cafeteria Component Program.) A qualified beneficiary who elects continuation coverage under COBRA pursuant to Article V will pay the premiums for such coverage pursuant to the provisions of this Article IV on either a pre-tax or after-tax basis, as applicable. However, in no event will an Employee be allowed to elect a benefit that is offered under a Cafeteria Component Program if such benefit is not a "qualified benefit" within the meaning of section 125(f) of the Code, and any such election will be null and void. All Participants in the Cafeteria Plan must be Employees.

(ii)     **Opt Out Feature.** The Employer may permit Employees who work in certain job classifications specified by the Employer to elect to receive an increase in Compensation for the Plan Year in lieu of participating in the Cafeteria Component Programs for such Year.

(b)     **Election Procedure.** An Employee's election to participate in a Cafeteria Component Program must be made according to the rules and procedures the Daily Administrator establishes. Such rules and procedures may include (but are not limited to) any or all of the following:

(i)     Compensation reduction contributions from the last month of a Plan Year can be used to pay accident or health premiums for insurance during the first month of the immediately following Plan Year, if done on a uniform and consistent basis with respect to all Participants;

(ii)     Evergreen elections are permitted for each of the Cafeteria Component Programs, including the Health Care Spending Account and the Dependent Day Care Spending Account; and

(iii)     New elections and revocations or changes in elections are permitted to be made electronically.

Such Employee's Compensation will be reduced in accordance with such election, and an amount equal to the reduction will be contributed by the Employer to cover the Employee's share of the cost of such benefit coverage under the Cafeteria Component Program.

**4.2     Annual Election Procedure**

(a)     **Annual Enrollment**.  Prior to the commencement of each Plan Year, the Daily Administrator will allow each Participant and each other Employee who will become a Participant as of the first day of the Plan Year to (i) elect to reduce his Compensation on a pre-tax basis (and to allocate any credit dollars, if applicable) in an amount equal to such Participant's share of the cost of benefit coverage elected by such Participant under the applicable Cafeteria Component Program (subject to any minimums and maximums set forth in each program which are hereby incorporated herein by this reference) or (ii) receive an increase in Compensation in lieu of participating in the Cafeteria Component Programs for such Plan Year, if applicable.  Such election will become effective as of the first day of the Plan Year and remain in effect for the entire Plan Year, except as provided below.  Subject to a Participant's ability to revoke his election, as provided in Section 4.4, any Compensation reduction election will, where appropriate, be adjusted automatically in the event of a change in any such cost.  The Participant must make his election pursuant to the rules and procedures established by the Daily Administrator and communicated to the Participant.

(b)     **Failure to Elect**.  An Employee who fails to make his election timely will be deemed to have elected to receive his full Compensation for the Plan Year in cash and will not be enrolled in any of the Cafeteria Component Programs under the Plan.

(c)     **Mid-Year Election For New or Newly Eligible Employees**.  As soon as practicable prior to a new Employee or a newly eligible current Employee first becoming eligible for a Cafeteria Component Program, the Daily Administrator will allow such person the opportunity to make the election described in Section 4.1.  A new or newly-eligible Employee who fails to make a timely election will be deemed to have elected to receive his full Compensation for the balance of the Plan Year in cash and will not be enrolled in any of the Cafeteria Component Programs under the Plan.

(d)     **Optional Retroactive Enrollments**.  If a Cafeteria Component Program permits immediate entry into that Cafeteria Component Program for new hires, then the Employer may elect to implement the retroactive election period described below in this Section 4.2(d).

If elected by an Employer, a 30-day retroactive enrollment period will be permitted for new hires only.  This retroactive enrollment period is not available to Employees who terminate employment and are rehired within 30 days of termination or return to employment following an unpaid leave of absence of less than 30 days.  The Employer may permit elections for retroactive enrollment to relate back to the Employee's date of hire.  However, Compensation reductions to pay for such an election must be from Compensation not yet currently available on the date of the election.

**4.3     Election Changes by Daily Administrator**

(a)     Either prior to or during any Plan Year the Daily Administrator may, as to all or any class of Participants and under rules uniformly applicable to similarly situated Participants, change any election then in effect as to future reductions in Compensation, including a modification of elections by (a) "highly compensated participants," as such term is defined in section 125 of the Code, (b) "key employees," as such term is defined in section 416 of the Code, (c) "highly compensated individuals," as such term is defined in section 105(h) of the Code, or (d) highly compensated employees or principal shareholders or owners as defined in section 129 of the Code with or without the consent of such Employees, if the Daily Administrator, in its discretion, determines that such reduction is necessary or advisable in order to satisfy the nondiscrimination requirements under provisions of the Code, including section 125 thereof, or to maintain the nontaxable status of benefits payable under the Cafeteria Component Programs.

(b)     If the Daily Administrator or Committee should discover that a mistake has been made with regard to the administration of any provision of the Plan (such as determining whether or when an Employee is eligible to participate in the Plan or executing annual or special elections made by a Participant), the Daily Administrator or Committee may take such administrative action as it deems necessary or appropriate to remedy the mistake in question, including but not limited to allowing participation in the Plan, providing for catch-up contributions, or modifying enrollment elections.  Any such administrative action will conform to the requirements of section 125 of the Code and the regulations issued thereunder.

**4.4     Election Revocation and Changes by Participants During the Plan Year**

(a)     **General Rule.**  Except as otherwise provided in this Section 4.4, a Participant may not revoke or change his election during a Plan Year.  Similarly, an eligible Employee who has elected not to participate in the Plan for a Plan Year may not change his election during such Plan Year (except as provided in this Section 4.4).

(b)     **Changes in Status.**  To the extent provided in the Component Programs, a Participant may revoke or modify his election for the balance of the Plan Year only if such revocation or modification is on account of and consistent with a Major Life Event.   If such revocation or modification is on account of and consistent with a Major Life Event, the Participant may make a new election for the remaining portion of the Plan Year; provided, however, that the new election must be on account of and consistent with the Major Life Event.  A Participant desiring to revoke or modify an election and, if applicable, to file a new election will so advise the Daily Administrator within the time and manner prescribed by the Daily Administrator.  However, (i) a Major Life Event on account of special enrollment rights under section 9801(f) of the Code (which apply in the event of the Participant's acquisition of a new Dependent or the loss of group health plan or health insurance coverage by the Employee, Spouse, or Child) need not satisfy the above consistency requirements; and (ii) with respect to a Component Program that provides life insurance benefits, an election to increase or decrease coverage is deemed to correspond with such Major Life Event.

(c)   **Cost or Coverage Changes**.   To the extent provided in the Component Programs or by the Daily Administrator, a Participant may file an election with the Daily Administrator to revoke or modify (subject to the conditions below) any prior election and/or to make a new election with respect to the remaining portion of a Plan Year as each separate Component Program (other than the Health Care Spending Account) may allow on account of (i) a significant increase or decrease in the cost of coverage, (ii) an improvement or addition of a coverage option, or (iii) a significant curtailment in the coverage provided under a Component Program as follows:

(A)   **Cost Changes**.  If the cost of a Participant's portion of coverage under a Component Program increases or decreases during the Plan Year, such Participant's Compensation reductions will automatically be increased or decreased on a prospective basis, as applicable; provided, however, that if the increase or decrease is significant, the Participant may make an election as described in the next sentence.  If the cost of a Component Program significantly increases or decreases during a period of coverage, a Participant may prospectively increase payments, decrease payments, or revoke his election and, in lieu thereof, elect to receive on a prospective basis coverage under another Component Program option providing similar coverage.   If no other Component Program option that provides similar coverage exists, the Participant may be permitted to revoke coverage altogether on account of a significant increase or decrease in the cost of coverage.  The determination of whether a cost increase or decrease is "significant" will be made by the Daily Administrator.

(B)   **Coverage Changes**.   If the coverage under a Component Program is significantly curtailed or a new Component Program or coverage option is added during the Plan Year, a Participant may file a written election with the Daily Administrator to make the following election changes.

(1)   **Significant curtailment without loss of coverage**.  If a Participant has a significant curtailment of coverage during the Plan Year that is not a loss of coverage, such as a significant increase in the deductible, the co-pay or the out-of-pocket cost sharing limit under a Health Care Component Program that is also a Cafeteria Component Program, any Participant who is participating in the Plan and receiving that coverage may revoke his election for that coverage and make a new election on a prospective basis under a Component Program option providing similar coverage.   The determination of whether a significant curtailment has occurred will be made by the Daily Administrator.   However, coverage under the Medical Benefit Program will be significantly curtailed only if there is an overall reduction in coverage provided to Participants generally.   Accordingly, in most cases, the loss of one particular physician in a network does not constitute a significant curtailment.

(2)     **Significant curtailment with loss of coverage**.   If a Participant has a significant curtailment of coverage during the Plan Year that is a loss of coverage, the Participant may revoke his election and on a prospective basis elect either to receive new coverage under another Component Program coverage option providing similar coverage or to drop coverage if no similar Component Program coverage option is available.   For this purpose, a loss of coverage means a complete loss of coverage under a Component Program or coverage option (including the elimination of a Component Program coverage option, an HMO ceasing to be available where the individual resides, or the individual losing all coverage under the option by reason of an overall lifetime or annual maximum).   In addition, the following events will also constitute a loss of coverage: (a) a substantial decrease in the medical care providers available under a coverage option under the Medical Benefit Program; (b) a reduction in the benefits for a specific type of medical condition or treatment with respect to a Participant (or enrolled Dependent) currently in that course of treatment; or (c) any other similar fundamental loss of coverage.

(C)     **Addition or improvement of benefit package option**.   If the Plan adds a new Component Program coverage option or Component Program, or if coverage under an existing Component Program or coverage option is significantly improved during a period of coverage, an eligible Employee (whether or not he has previously made an election under the Plan or has previously elected the Component Program option) may revoke his election under the Plan and elect the newly added or improved Component Program option.  For example, if a new HMO option is added as a Medical Benefit Program coverage option during the Plan Year, the Plan may allow eligible Employees to elect that option or any existing Medical Benefit Program option provided through the Plan. Conversely, if the eligible Employee had previously made an election under the Plan, then the eligible Employee may only elect to revoke his coverage and elect the same type of coverage (*i.e.*, "Employee only" or family coverage) under the Medical Benefit Program option.  For example, if prior to the beginning of the Plan Year, an eligible Employee elects "Employee plus one" coverage under an indemnity plan coverage option provided under the Medical Benefit Program and during the year the Company adds an HMO option that provides "Employee only" or family coverage, the eligible Employee may elect to revoke his election for indemnity coverage and elect family coverage under the HMO option on a prospective basis.  The eligible Employee could not, however, elect "Employee only" coverage under the HMO option because that election would not be consistent with the addition of the HMO option since prior to such date the eligible Employee had "Employee plus one" coverage.

(d) **FMLA or USERRA Leave**.  To the extent provided in a Component Program, a Participant may revoke his election for the balance of the Plan Year upon his taking FMLA Leave or USERRA Leave.  In addition, a Participant upon his taking of or returning from, or during his, FMLA Leave or USERRA Leave may modify or revoke his election in accordance with the Major Life Event rules in Paragraph (b), above.

(e) **Medicare or Medicaid Entitlement**.  A Participant may file an election with the Daily Administrator to revoke or modify any prior election and/or to make a new election with respect to the remaining portion of a Plan Year as each separate Component Program may allow on account of entitlement to Medicare or Medicaid (other than coverage solely for pediatric vaccines).  Likewise, a Participant may file an election with the Daily Administrator to revoke or modify any prior election and/or to make a new election with respect to the remaining portion of a Plan Year as each separate Component Program may allow on account of the loss of entitlement to Medicare or Medicaid.

(f) **Judgment, Decree or Order**.  If a judgment, decree or order resulting from divorce, legal separation, annulment or a change in legal custody (including a QMCSO) requires accident or health coverage of an Employee's Dependent Child, the Employee may change his election to (i) add coverage for the Employee and/or the Dependent Child under the Medical Benefit Program if the order requires or (ii) cancel Medical Benefit Program coverage for the Dependent Child if the order requires the Spouse, former Spouse or someone else to provide coverage for the Child; provided, however, that the Employee will not be permitted to revoke coverage for the Child unless he provides proof of such alternate coverage.

(g) **Effective Date of Revocation or Change**.  The Daily Administrator will review an Employee's or Participant's request to revoke or modify his election and will determine if the Participant has met the requirements of Paragraphs (b), (c), (d), (e), or (f) above.  Except as the Daily Administrator may otherwise provide by rule or regulation, the Daily Administrator will approve an Employee's or Participant's request to revoke or modify his election only if the request is received by the Daily Administrator no later than 31 days after the occurrence of the reason therefore.

(h) **Health Savings Account Contributions**.  Notwithstanding any provision of this section 4.4 or the Plan to the contrary, the following special rules apply to an HSA Eligible Participant:

(i)   Subject to the limitations of section 223 of the Code, each HSA Eligible Participant may, at any time during the Plan Year, prospectively change his or her election with regard to Employee contributions to such HSA (and only such contributions), and such election change will be effective as of the first day of the first administratively practicable pay period coincident with or next following the date such request for an election change is completed and filed with the Daily Administrator.

(ii)  Subject to the limitations of section 223 of the Code, any Participant who ceases to be an HSA Eligible Participant may, at any time during the Plan Year, prospectively revoke his or her existing election with regard to his or

her HSA contributions (and only such contributions), and any such revocation will be effective on the first day of the first administratively practicable pay period coincident with or next following the date the revocation request is completed and filed with the Daily Administrator.

(i)     **Component Programs Control.** A Participant will not be permitted to revoke an existing election and/or file a new election to the extent such revocation or filing conflicts with the terms of the applicable Component Program.

### 4.5     Automatic Termination of Election

A Participant's election with respect to a Cafeteria Component Program will automatically terminate on the date on which the Participant ceases to be a Participant in that program; however, coverage or benefits under that program may continue if and to the extent provided therein.

### 4.6     Maintenance of and Adjustments to Spending Accounts

(a)     **Establishment of Spending Accounts.** The Daily Administrator will maintain separate accounts for each Participant who elects to participate in either (or both) of the Spending Accounts in accordance with Section 4.1.  Likewise, the Daily Administrator will establish a separate account for each Participant who continues COBRA coverage under the Health Care Spending Account Program as provided pursuant to Section 5.10.  Each such separate account will be credited and charged only with those credits and charges attributable to such account as specified herein and in the Spending Accounts.  A credit or debit balance in any one such account may not be used to credit or debit any other such account, and each such account will be administered separately.  No interest will be credited to or accrue on any balance in such accounts.

(b)     **Credits.** Each month or part thereof during which a Participant has an account pursuant to Paragraph (a), such account will reflect:  (i) any credit thereto as of the close of the prior month, plus (ii) the amount credited thereto during such month in accordance with the Spending Accounts.

(c)     **Debits.** Each month, the value of any benefits paid to or on behalf of a Participant, Spouse, or Dependent under a Spending Account Program will be charged against such Participant's account for that program, and will reduce his balance in that account.

(d)     **Forfeiture.** Any credit balance remaining in such an account as of the end of a Plan Year will be forfeited and applied in accordance with the provisions of the applicable Spending Account Program.

(e)     **Substantiation.** All claims will be substantiated in accordance with the Code section 125 and the regulations thereunder prior to payment or reimbursement of expenses for "qualified benefits."

**4.7**     **Limitation of Article**

This Article IV applies only to the Cafeteria Component Programs.

_____

End of Article IV

## ARTICLE V — COBRA

**5.1     Continuation of Coverage**

(a)     **General Rule**.  Subject to the provisions of this Article V, each "qualified beneficiary" who would "lose coverage" under a Health Care Component that is a group health plan within the meaning of section 5000(b)(1) of the Code or section 607(1) of ERISA (*i.e.*, the Medical Benefit Program component (includes all insured and self-funded medical benefits provided), the Dental Benefit Program component, the Vision Benefit Program component, and the Health Care Spending Account component) as a result of a "qualifying event" will be entitled to elect, within the "election period," continuation of coverage under that Health Care Component.  The foregoing terms in quotations are defined below.

(b)     **Coverage**.  In Paragraph (a), "coverage" means coverage that—as of the time coverage is being provided—is identical to the coverage provided under the Health Care Component to similarly situated beneficiaries under the Health Care Component who have not had a qualifying event.  If coverage under the Health Care Component is modified for any group of similarly-situated beneficiaries, coverage under this Article V will likewise be modified for all individuals who are similarly-situated qualified beneficiaries under that Health Care Component. Further, if there is a choice among coverage options available to participants in the Health Care Component, this choice will be offered to each qualified beneficiary.    Continuation of coverage will not be conditioned upon—nor discriminate on the basis of lack of—evidence of insurability or medical underwriting.

**5.2     Qualifying Event and Loss of Coverage**

(a)     **Qualifying Event**.  In this Article, the term "**qualifying event**" means, with respect to a Participant, any of the following events that—if not for the continuation of coverage required under Section 5.1—would cause a qualified beneficiary to "lose coverage" under a Health Care Component:

(i)     Death of the Participant;

(ii)     Termination of the Participant's employment (other than for the Participant's gross misconduct) or reduction in hours of service of the Participant's employment;

(iii)     Divorce or legal separation of the Participant from his or her Spouse;

(iv)     Entitlement by the Participant to Medicare benefits;

(v)     A Child ceasing to qualify as such under the terms of the Plan; or

(vi)     A bankruptcy proceeding in a case under Title 11 of the United States Code, commencing on or after July 1, 1986, with respect to the Employer from whose employment a Participant retired at any time.  For purposes of the foregoing, a loss of coverage includes a substantial elimination of coverage with respect to a qualified beneficiary described in Section 5.3(a)(ii) within one year before or after the date of commencement of the

bankruptcy proceeding in a case under Title 11 of the United States Code. For purposes of this Paragraph and all provisions of Article V applicable to this Paragraph, "**Participant**" means an individual who is a retiree of the Employer and is (or was) provided coverage under the Plan because he worked for the Employer.

(b)   **Loss of Coverage**. In this Article V, to "**lose coverage**" means to cease to be covered under the same terms and conditions as in effect immediately prior to the qualifying event. If coverage is reduced or eliminated in anticipation of an event, the reduction or elimination is disregarded in determining whether the event causes a loss of coverage. Moreover, a loss of coverage need not occur immediately after the event, so long as the loss of coverage will occur prior to the end of the coverage period described in Section 5.7. For purposes of an FMLA Leave, the loss of coverage and the qualifying event occur on the last day of the FMLA Leave, even if the Participant did not maintain coverage under the Health Care Component during the FMLA Leave; provided, however, that if coverage extends beyond the end of the FMLA Leave, then the qualifying event occurs at the time of the actual loss of coverage.

## 5.3   Qualified Beneficiaries

(a)   **General Rule**. In this Article V, the term "**qualified beneficiary**" means:

(i)   Any individual who (A) was a Participant or a Covered Dependent of a Participant under a Health Care Component on the day before the qualifying event or (B) is a child born to or placed for adoption with the Participant during the period of the Participant's continuation of coverage under this Article V; and

(ii)   For a qualifying event that is the bankruptcy of the Employer as described in Section 5.2(a)(vi), a Participant who had retired on or before the date of substantial elimination of coverage and any other individual who, on the day before such qualifying event, was a Covered Dependent of the Participant.

(b)   **Exclusions**. The term "qualified beneficiary" will not include (i) a Participant whose status as an eligible Employee is attributable to a period in which he was a nonresident alien and received from the Employer no earned income (within the meaning of section 911(d)(2) of the Code) constituting income from sources within the United States (within the meaning of section 861(a)(3) of the Code), (ii) a Covered Dependent of a Participant described in clause (i) above, or (iii) a Covered Dependent who is a Domestic Partner.

## 5.4   Notice Requirements

(a)   **Initial Notice of COBRA Rights**. The Daily Administrator will provide, at the time of commencement of coverage under a Health Care Component, written notice to each Participant and his Covered Dependents, if any, of the rights provided under this Article V. Such notice will be provided not later than the **earlier** of (i) 90 days after coverage under the Plan begins, or (ii) the first date on which the Daily Administrator is required to provide the Participant or Covered Dependent with notice of the right to elect to continue coverage under the Plan

on account of the occurrence of a qualifying event. Further, in any case where the Daily Administrator is required to provide notice of the right to elect continuation coverage as described in (ii), the furnishing of the notice of the right to elect continuation coverage under Section 5.4(d) will be deemed to satisfy the requirements of this Section 5.4(a).

(b)     **Employer Notice of Qualifying Event**.  The Employer will notify the Daily Administrator of a qualifying event as described in Section 5.2(a)(i), (ii), (iv), or (vi) (respectively, the Participant's death, termination of employment or reduction in hours, or entitlement to Medicare, or the bankruptcy of the Employer) within 30 days of the **later** of (i) the date of the qualifying event or (ii) the date coverage under the Plan is lost as a result of the qualifying event.

(c)     **Participant or Qualified Beneficiary Notice**.  Each Participant or qualified beneficiary must notify the Daily Administrator in writing of the occurrence of any qualifying event that is a divorce, legal separation, or loss of dependent status, as described in Section 5.2(a)(iii) or (v), or the occurrence of a second qualifying event that would increase the duration of continuation coverage from 18 or 29 months to 36 months within 60 days of the **later** of (i) the date of the qualifying event, (ii) the date the qualified beneficiary would lose coverage because of the qualifying event, or (iii) the date the qualified beneficiary is informed through the distribution of a summary plan description or general notice of the responsibility to provide such notice to the Daily Administrator and the Plan's procedures for doing so.  If this notice of qualifying event is not so provided, the qualified beneficiary will lose his right to elect such continuation of coverage.   For purposes of the foregoing, if more than one qualified beneficiary would lose coverage on account of the divorce or legal separation of a Participant or the occurrence of a second qualifying event, a timely written notice of the divorce or legal separation or second qualifying event that is provided by the Participant or by any one of such qualified beneficiaries will be sufficient to preserve the election rights of the Participant and all such beneficiaries.

Each qualified beneficiary, who is determined under Title II or XVI of the Social Security Act to have been disabled (1) at the time of the qualifying event described in Section 5.2(a)(ii), or (2) within 60 days of such qualifying event (or, in the case of a newborn or recently adopted child of the Participant, within 60 days of the date of birth or placement for adoption), is responsible for notifying the Daily Administrator in writing of the determination before the end of the initial 18 month continuation period and within the date that is 60 days after the latest of (A) the date of such disability determination, (B) the date of the qualifying event, (C) the date the qualified beneficiary would lose coverage because of the qualifying event, or d. the date the qualified beneficiary is informed through the distribution of a summary plan description or a general notice of the responsibility to provide such notice to the Daily Administrator and the Plan's procedures for doing so.  The qualified beneficiary is also responsible for notifying the Daily Administrator in writing of a final determination that the qualified beneficiary is no longer disabled under such titles within 30 days after the **later** of (x) the date of such determination or (y) the date that the qualified beneficiary is informed through the distribution of a summary plan description or a general notice of the responsibility to provide such notice to the Daily Administrator and the Plan's procedures for doing so.

(d) **Daily Administrator Notice of Rights to Elect Continuation Coverage**.  Upon receipt of the notice by the Employer described in Section 5.4(b) (regarding a qualifying event which is, respectively, the Participant's death, termination of employment or reduction in hours, or entitlement to Medicare, or the bankruptcy of the Employer), or upon receipt of the notice from the Participant or qualified beneficiary described in Section 5.4(c) (regarding an initial qualifying event which is, respectively, divorce or legal separation, or loss of dependent status or a second qualifying event), the Daily Administrator will notify any qualified beneficiary of the right to elect COBRA continuation coverage with respect to such qualifying event.  This notice will be given to the qualified beneficiary within 14 days of the date on which the Daily Administrator is notified under Section 5.4(b) or (c), whichever is applicable, and will contain the information required by Labor Regulation section 2590.606-4(b)(4).  Any such notice to an individual who is a qualified beneficiary as the Spouse of the Participant will be treated as notice to all other qualified beneficiaries who are minors residing with that Spouse at the time the notice is given.

(e) **Daily Administrator Notice of Unavailability of COBRA**.   If the Daily Administrator receives notice from a Participant or qualified beneficiary of a qualifying event pursuant to Section 5.4(c) above and determines that such Participant or qualified beneficiary is not entitled to continuation coverage under COBRA, the Daily Administrator will notify the Participant or qualified beneficiary that COBRA continuation coverage is not available and the reasons why.  Such notice of the unavailability of COBRA continuation coverage will be provided within 14 days after the Daily Administrator receives notice of the qualifying event pursuant to Section 5.4(c) above.

**5.5   Election Requirements**

(a) **Election Period**.  The term "election period" means the period that begins on the date coverage terminates under the Health Care Component due to a qualifying event and ends 60 days after the **later** of (i) the date on which coverage terminates under the Health Care Component due to the qualifying event or (ii) the date the qualified beneficiary is sent the notice required under Section 5.4(d).  Notwithstanding Section 20.7 (regarding notice and filing), an election of continuation coverage will be deemed made when sent by the qualified beneficiary.   An election of continuation coverage made during the election period is retroactive to the date of the qualifying event.  If a qualified beneficiary waives his right to elect continuation coverage, the waiver may be revoked by the qualified beneficiary at any time during the election period; provided, however, that if a qualified beneficiary revokes his waiver, continuation coverage will not be provided for any period prior to the waiver.

(b) **Nature of Election**.  Each qualified beneficiary (including a child who is born to or placed for adoption with a Participant receiving continuation coverage under this Article V) will be offered the opportunity to make an independent election of continuation coverage under this Article V.   However, except as otherwise specified in an election, any election of continuation coverage that is made by a qualified beneficiary who is the Participant or a Spouse of the Participant and that does not specify whether the election is for self-only coverage will be deemed to include an election of continuation on behalf of any other qualified beneficiary who would lose coverage under the Health Care Component due to the

qualifying event.  If there is a choice among types of coverage under the Health Care Component, each qualified beneficiary is entitled to make a separate selection among the types of coverage.

### 5.6    Cost of Coverage

(a)    **Responsible Party**.  A qualified beneficiary who elects continuation coverage under this Article V will be solely responsible for paying the full cost of such continued coverage.  Payment is considered made when it is sent to the proper party.  The Employer will not be obligated to contribute to the cost of continuation coverage.    Payment of any initial premium by or on behalf of a qualified beneficiary will not be required until 45 days after the date continuation coverage is elected and will cover the cost of coverage for the period from the date of the qualifying event.

(b)    **Amount**.  The cost of continuation coverage will be determined by the Daily Administrator and will not exceed 102 percent of the cost to the Health Care Component for the same period of coverage for other similarly-situated individuals who have not experienced a qualifying event; provided, however, that if an 18-month period of coverage is extended to 29 months for the disabled qualified beneficiary pursuant to Section 5.7(a)(i)(B), any reference in this Paragraph (b) to 102 percent is deemed a reference to 150 percent for each month after 18 months with respect to the disabled qualified beneficiary and any other related qualified beneficiaries extending their coverage.  Note, however, that if the disabled qualified beneficiary does not elect continuation beyond 18 months, then the cost for any other related qualified beneficiaries who do elect coverage beyond 18 months remains 102 percent and may not be increased to 150 percent.  At the election of the payor, the cost of continuation coverage may be paid in monthly installments.  If timely payment of such cost is made in an amount not significantly less than the amount required, then the amount paid will be deemed to satisfy the amount required, unless the qualified beneficiary is notified of the amount of the deficiency and is given a reasonable time not less than 30 days after the date of the notice in which to pay the deficiency.

(c)    **Source of Payment**.  Premiums for continuation coverage will be paid with after-tax dollars pursuant to the cafeteria plan provisions of this Plan, except to the extent permitted by applicable law and the Plan's administrative procedures.

### 5.7    Period of Coverage

(a)    **General Rule**.  Except as provided in Section 5.10, continuation coverage will extend for the period beginning on the date of the qualifying event and ending:

    (i)    For a qualifying event that is a termination or reduction in hours as described in Section 5.2(a)(ii), 18 months after the qualifying event, unless:

        (A)    a qualifying event (other than a qualifying event that is a bankruptcy of the Employer as described in Section 5.2(a)(vi)) occurs during the 18-month period, in which case coverage will end 36 months after the qualifying event described in Section

5.2(a)(ii) with respect to all qualified beneficiaries except the Employee, or

(B)    the qualified beneficiary is determined under Title II or Title XVI of the Social Security Act to have been disabled either at the time of a qualifying event described in Section 5.2(a)(ii) or at any time during the first 60 days of continuation coverage, in which case reference to 18 months in this Clause (i) is deemed a reference to 29 months with respect to all related qualified beneficiaries, but only if the disabled qualified beneficiary (or any related qualified beneficiary) has provided notice of the determination as required by Section 5.4(c) before the end of the first 18 (not 29) months of continuation coverage and within 60 days of the Social Security disability determination;

(ii)    For a qualifying event not described in Section 5.2(a)(ii) (regarding termination or reduction in hours) or (vi) (regarding bankruptcy), 36 months after the qualifying event with respect to all qualified beneficiaries except the Employee; and

(iii)    For a qualifying event that is a bankruptcy of the Employer as described in Section 5.2(a)(vi);

(A)    when the Participant or the qualified beneficiary who is the surviving Spouse of the Participant dies, or

(B)    for the surviving Spouse or surviving Children of the Participant, 36 months after the Participant dies.

(b)    **Special Rule for Medicare Entitlement**. For an event described in Section 5.2(a)(iv) (without regard to whether the event is a qualifying event), the period of coverage for qualified beneficiaries other than the Participant will not terminate before the end of the 36-month period beginning when the Participant becomes entitled to Medicare benefits. In addition, in the case of a qualifying event that is the termination or reduction in hours of the Employee, the Employee's subsequent entitlement to Medicare will not constitute a second qualifying event unless becoming covered by Medicare would have caused the Employee to lose active employee coverage under the Plan.

## 5.8    Termination of Coverage

(a)    **Date of Termination**. Continuation coverage for a qualified beneficiary will terminate prior to the period of coverage described in Section 5.7 when any one of the following occurs:

(i)    The Employer—and all entities that are members of a group that is described in section 414(b), (c), (m), or (o) of the Code and that includes the Employer—cease to provide any group health plan within the meaning of section 5000(b)(1) of the Code or section 607(1) of ERISA;

(ii)    Coverage ceases under the Health Care Component due to a failure to pay any premium required under the Health Care Component within the

**latest** of (A) 30 days after the date due, (B) the last date a Participant is permitted to make any required contribution under the terms of that program, or (C) if applicable, the last date the Employer is permitted to pay for coverage of similarly-situated Participants under the terms of a contract between the Employer and any Insurer, HMO, PPO, or other entity that provides group-health benefits on behalf of the Employer;

(iii) The qualified beneficiary first becomes covered under any other group health plan within the meaning of section 5000(b)(1) of the Code or section 607(1) of ERISA of an employer other than the Employer, provided that such coverage does not begin on or before the date on which continuation coverage is elected;

(iv) For a qualified beneficiary who is entitled to 29 months of continuation coverage on account of disability and for all related qualified beneficiaries, the **earlier** of (A) the first day of the month that begins more than 30 days after the date of the final determination under Title II or XVI of the Social Security Act that the disabled qualified beneficiary is no longer disabled, or (B) the end of the original 18-month continuation period specified in Section 5.7(a)(i); or

(v) The qualified beneficiary (other than a qualified beneficiary described in Section 5.3(a)(ii) (regarding bankruptcy)) first becomes entitled to and enrolled in Medicare, provided the qualified beneficiary does not first become entitled to and enrolled in Medicare on or before the date continuation coverage is elected. Also, such entitlement to Medicare may constitute a second qualifying event for qualified beneficiaries other than the Employee.

(b) **Notification of Termination**.  The Daily Administrator will notify a COBRA Beneficiary that continuation coverage of the COBRA Beneficiary or any person enrolled pursuant to Section 5.9(a) has terminated under the provisions of this Section 5.8, and of the effective date of such termination.  The notice must also advise the COBRA Beneficiary of any rights to other group health coverage that are available upon the termination of coverage pursuant to this Article V.  The notice will be provided as soon as administratively feasible after the date of termination.

**5.9   Rights and Obligations of COBRA Beneficiary**

(a) **Enrollment of Dependents**.  Each qualified beneficiary who becomes a COBRA Beneficiary will be entitled to enroll each family member who would qualify as his Spouse, Domestic Partner, Child, or other Dependent, subject to the same terms and conditions for enrollment of Dependents set forth in the applicable Health Care Component generally; provided, however, that persons enrolled pursuant to this Paragraph (a) are not themselves eligible to become qualified beneficiaries within the meaning of Section 5.3.

(b) **Other Rights**.  Except as otherwise specifically provided in the Plan, each individual who becomes a COBRA Beneficiary pursuant to this Article V will have the same rights and obligations as those provided to Participants and Covered Dependents under the terms of the Plan, including those regarding enrollment,

amendment, termination or change of coverage, coordination of benefits, subrogation, claims procedure and review, and provision of information.

**5.10    Applicability of Article**

This Article V will apply only to a Participant or Covered Dependent who, or to a Health Care Component that is a group health plan within the meaning of section 5000(b)(1) of the Code or section 607(1) of ERISA (*i.e.,* the Medical Benefit Program component (includes all insured and self-funded medical benefits provided), the Dental Benefit Program component, the Vision Benefit Program component, and the Health Care Spending Account component) which, is subject to or entitled to the continuation of coverage provisions of COBRA pursuant to section 4980B of the Code or sections 601 through 608 of ERISA.

Moreover, this Article V will only apply to the Health Care Spending Account Program for the balance of the Plan Year in which the qualifying event occurred, and even then only to the extent the maximum benefit available to the Participant at the time of the qualifying event for the remainder of the Plan Year is not more than the maximum amount the Health Care Spending Account Program could require as payment to maintain coverage for the remainder of the Plan Year.

Notwithstanding any provision of the Plan to the contrary, this Article V will only apply with respect to a Health Care Component subject to COBRA that does not contain its own COBRA procedures or to the extent that the COBRA procedures contained within such Health Care Component fail to address or ambiguously address a particular issue.

**5.11    Statutory Conflict**

This Article V will be administered in the manner required by COBRA and the regulations issued thereunder.  In the event that there is a discrepancy between the provisions of this Article V and COBRA or the regulations issued thereunder, such discrepancy will be resolved to give full effect to the provisions of COBRA and/or such regulations.

_____

End of Article V

## ARTICLE VI — HEALTH CARE SPENDING ACCOUNT

**6.1     Establishment of Plan**

This Article VI constitutes a separate Health Care Spending Account that is intended to qualify as a medical reimbursement plan under section 105 of the Code and will be interpreted in a manner consistent with such Code section and the Treasury regulations thereunder.  Participants who elect to participate in this Health Care Spending Account may submit claims for the reimbursement of Medical Expenses.

The term "**Medical Expenses**" means any expense for medical care within the meaning of the term "medical care" or "medical expense" as defined in section 213 of the Code and the rulings and Treasury regulations thereunder, and not otherwise reimbursed by insurance or used by the Participant as a deduction in determining his tax liability under the Code. However, a Participant may not be reimbursed for (i) the cost of other health coverage such as premiums paid under plans maintained by the employer of the Participant's Spouse or individual policies maintained by the Participant or his Spouse or Dependent, (ii) an over-the-counter medicine or drug (except for insulin) unless a prescription (as such term is defined in Internal Revenue Service Notice 2010-59 or subsequent guidance) has been obtained for the over-the-counter medicine or drug, or (iii) "qualified long-term care services" as defined in section 7702B(c) of the Code.

**6.2     Limitation on Allocations**

Either the Daily Administrator or the Component Program Document may specify a minimum and maximum amount that may be allocated to the Health Care Spending Account by a Participant in or on account of any Plan Year.  Any such minimum or maximum will be set forth in the Annual Enrollment materials, which are hereby incorporated by reference.

**6.3     Nondiscrimination Requirements**

It is the intent of this Health Care Spending Account not to discriminate in favor of highly compensated individuals or participants within the meaning of section 105 of the Code. If the Daily Administrator deems it necessary to avoid discrimination under this Health Care Spending Account, it may, but will not be required to, reject any elections or reduce contributions or benefits in order to assure compliance with this Section 6.3. Any act taken by the Daily Administrator under this Section 6.3 will be carried out in a uniform and nondiscriminatory manner.  Contributions which are not utilized to provide benefits to any Participant by virtue of any administrative act under this paragraph will be forfeited.

**6.4     Coordination With Cafeteria Component Program**

Those Employees specified in the Health Care Spending Account Component Program Document will be eligible to elect to participate in the Cafeteria Component Program and receive benefits under this Health Care Spending Account.  The enrollment under the Cafeteria Component Program will constitute enrollment under this Health Care Spending Account.  In addition, other matters concerning contributions, elections and the like will be governed by the general provisions of the Plan and the Health Care Spending Account Component Program Documents.

**6.5** **Health Care Spending Account Claims**

(a) **Reimbursement of Medical Expenses.** All eligible Medical Expenses incurred by a Participant will be reimbursed from his Health Care Spending Account, even if the submission of such a claim occurs after his participation under the Health Care Spending Account ceases if the Participant timely files for reimbursement as described in (c) below and the Medical Expenses were incurred during the applicable Plan Year and during the portion of such Plan Year as permitted herein. In general, a claim is incurred when the care is provided. A Participant's Compensation reductions and election to participate in the Health Care Spending Account will automatically terminate as of the end of the month in which the last payroll period for which the Participant is paid ends

(b) **Maintain Account Balance Available.** The Daily Administrator will direct the reimbursement to each eligible Participant for all eligible Medical Expenses, up to a maximum of the amount designated by the Participant for the Health Care Spending Account for the Plan Year. Reimbursements will be made available to the Participant throughout the year without regard to the amount of contributions which have been allocated to the fund at any given point in time. Furthermore, a Participant will be entitled to reimbursements only for amounts in excess of any payments or other reimbursements under any health care plan or insurance policy covering the Participant and/or his Spouse or Dependents.

(c) **Claim Filing Deadline.** Claims for the reimbursement of Medical Expenses incurred in any Plan Year must be filed by March 31 of the Plan Year following the Plan Year in which the expenses were incurred unless specified otherwise in the Component Program Documents. Eligible Medical Expenses properly submitted for payment will be paid as soon administratively possible after the claim has been filed.

The Committee, in its sole discretion, will determine how forfeitures are allocated, from among the following options: (a) retained by the Employer, (b) used to defray expenses of administering the Cafeteria Component Program; (c) used to reduce Compensation reduction amounts for the immediately following Plan Year, or (d) returned to Employees on a reasonable and uniform basis (but not based on individual claims experience). If not retained by the Employer or used to defray expenses of administering the Cafeteria Component Program, the forfeitures will be allocated among Employees on a reasonable and uniform basis.

(d) **Manner of Payment.** Reimbursement payments under this Health Care Spending Account will be made directly to the Participant. However, in the Administrator's discretion, payments may be made directly to the service provider.

(e) **Substantiation.** All claims must be substantiated in accordance with this section or the terms of the Component Program documents prior to payment or reimbursement of any Medical Expenses. In general, all claims must be substantiated by information from a third-party that is independent of the Employee and his Dependents. In addition, all claims must set forth:

(i) the person(s) on whose behalf the Medical Expense was incurred;

(ii)    the nature and date of the expenses so incurred;

(iii)   the amount of the requested reimbursement;

(iv)    the name of the person, organization or entity to whom the expense was or is to be paid and taxpayer identification  number;

(v)     a statement that such expenses have not otherwise been reimbursed and that the Participant will not seek reimbursement through any other source;

(vi)    other such details about the expenses that may be requested by the Daily Administrator on the reimbursement request form or otherwise.

The application will be accompanied by those documents listed above from an independent third party, along with any other documentation that the Daily Administrator may request (for instance, an EOB which contains all necessary information).  There can be no self-substantiation of an expense by a Participant (*i.e.*, cancelled checks to a doctor are not sufficient, standing alone).

_____

End of Article VI

## ARTICLE VII — DEPENDENT DAY CARE SPENDING ACCOUNT

### 7.1    Establishment of Account

This Article VII constitutes a separate Dependent Day Care Spending Account that is intended to qualify as a dependent care assistance program under section 129 of the Code and will be interpreted in a manner consistent with such Code section. Participants who elect to participate in this program may submit claims for the reimbursement of Employment-Related Dependent Day Care Expenses. All amounts reimbursed under this Dependent Day Care Assistance Program will be paid from amounts allocated to the Participant's Dependent Day Care Spending Account.

For purposes of this Article VII, the term "**Employment-Related Dependent Day Care Expenses**" means the amounts paid for expenses of a Participant for those services which if paid by the Participant would be considered employment related expenses under section 21(b)(2) of the Code. Generally, they will include expenses for household services for the care of a Qualifying Individual (as defined in this Article VII) or for household services in and about the Participant's home of ordinary and usual services necessary to the maintenance of the household and attributable to the care of the Qualifying Individual, to the extent that such expenses are incurred to enable the Participant and his spouse (if any) to be gainfully employed for any period for which there are one or more Qualifying Individuals with respect to such Participant.  There must be appropriate substantiation that the expense is employment-related (see Section 7.5(e)).  The determination of whether an amount qualifies as an Employment-Related Dependent Day Care Expense will be made subject to the following rules:

(a)    If such amounts are paid for expenses incurred outside the Participant's household, they will constitute Employment-Related Dependent Day Care Expenses only if incurred for (i) a Qualifying Individual who is a qualifying child under age 13 or (ii) the care of any other Qualifying Individual (a qualifying child age 13 or over, a qualifying relative or spouse, each of whom must be incapable of self-care and who has the same principal place of abode as the Participant for more than one-half of the year) who regularly spends at least 8 hours per day in the Participant's household;

(b)    If the expense is incurred outside the Participant's home at a facility that provides care for more than 6 individuals who do not regularly reside at the facility and that receives a fee, payment or grant for such services (regardless of whether the facility is operated for profit), the facility must comply with all applicable state and local laws and regulations, including licensing requirements, if any;

(c)    Employment-Related Dependent Day Care Expenses of a Participant will not include amounts paid or incurred to (i) a child (within the meaning of Code section 152(f)(1)) of such Participant who is under the age of 19 at the close of the taxable year in which the services are performed, (ii) an individual who is a dependent of such Participant or such Participant's Spouse for whom a personal exemption is allowed under Code section 151(c), (iii) a Participant's Spouse, or (iv) a parent of a Participant's under age 13 qualifying child (as defined in Code section 152(a)(1)); and

(d)   Employment-Related Dependent Day Care Expenses will not include expenses for which the Participant is reimbursed for the expense through insurance or any other plan.

A "**Qualifying Individual**" means (i) a tax dependent of a Participant as defined under Code section 152, who is the Participant's qualifying child (as defined in Code section 152(a)(1)) and who has not attained age 13, (ii) a tax dependent of a Participant, as defined under Code section 152 (a qualifying child or qualifying relative), but determined without regard to subsections (b)(1), (b)(2) and (d)(1)(B) thereof (which include certain exceptions to the definition of dependent and a gross income limitation), who (A) is physically or mentally incapable of self care and (B) has the same principal place of abode as the Participant for more than half of the year or (iii) a Participant's Spouse who meets (A) and (B) above.  Whether an individual is a Qualifying Individual is determined on a daily basis.  A special rule applies for certain parents who are divorced, separated or living apart.

**7.2   Limitation on Allocations**

Amounts paid from a Participant's Dependent Day Care Spending Account in or on account of any taxable year of the Participant will not exceed the lesser of the earned income limitations described in section 129(b) of the Code or $5,000 ($2,500 if a separate tax return is filed by a Participant who is married as determined under the rules of paragraphs (3) and (4) of section 21(e) of the Code).  Expenses for which the Participant claims the Dependent Care Tax Credit under Code section 21 cannot be reimbursed.  The Daily Administrator or the Component Program Document may also specify a minimum and maximum amount that may be allocated to the Dependent Day Care Spending Account by a Participant in or on account of any Plan Year.  Any such minimum or maximum will be set forth in the Annual Enrollment materials, which are hereby incorporated by reference.

**7.3   Nondiscrimination Requirements**

It is the intent of this Dependent Day Care Spending Account not to discriminate in favor of highly compensated employees or key employees or their dependents within the meaning of section 129 of the Code.  If the Daily Administrator deems it necessary to avoid discrimination under this Dependent Day Care Spending Account, it may, but will not be required to, reject any elections or reduce contributions or benefits in order to assure compliance with this Section 7.3. Any act taken by the Daily Administrator under this Section 7.3 will be carried out in a uniform and nondiscriminatory manner.

**7.4   Coordination With Cafeteria Component Program**

Those Employees specified in the Dependent Day Care Spending Account Component Program Document will be eligible to elect to participate in the Cafeteria Component Program and receive benefits under this Dependent Day Care Spending Account.  The enrollment under the Cafeteria Component Program will constitute enrollment under this Dependent Day Care Spending Account.   In addition, other matters concerning contributions, elections and the like will be governed by the general provisions of the Plan and the Dependent Care Spending Account Component Program Documents.

7.5    **Dependent Day Care Spending Account Claims**

(a)    **Reimbursement of Employment-Related Dependent Day Care Expenses.**  All eligible Employment-Related Dependent Day Care Expenses incurred by a Participant during the Plan Year will be reimbursed from his Dependent Day Care Spending Account, even if the incurrence or submission of such a claim occurs after his participation under the Dependent Day Care Spending Account ceases, if the Participant timely files for reimbursement as described in (c) below.  In general, a claim is incurred when the care is provided.  A Participant's Compensation reductions and election to participate in the Dependent Day Care Spending Account will automatically terminate as of the day of the Participant's termination of employment.

(b)    **Maintain Account Balance Available.**  The Daily Administrator will direct the reimbursement to each eligible Participant for all eligible Employment-Related Dependent Day Care Expenses, up to the balance in the Participant's Dependent Day Care Spending Account at the time the expenses are submitted for reimbursement.

(c)    **Claim Filing Deadline/Forfeitures.**   Claims for the reimbursement of Employment-Related Dependent Day Care Expenses incurred in any Plan Year must be filed by March 31 of the Plan Year following the Plan Year in which the expenses were incurred unless specified otherwise in the Component Program Documents.   Employment-Related Dependent Day Care Expenses properly submitted for payment will be paid as soon as administratively possible after the claim has been filed.

The Daily Administrator, in its sole discretion, will determine how forfeitures are allocated, from among the following options:  (a) retained by the Employer, (b) used to defray expenses of administering the Cafeteria Component Program; (c) used to reduce Compensation reduction amounts for the immediately following Plan Year, or (d) returned to Employees on a reasonable and uniform basis (but not based on individual claims experience).  If not retained by the Employer or used to defray expenses of administering the Cafeteria Component Program, the forfeitures will be allocated among Employees on a reasonable and uniform basis.

(d)    **Manner of Payment.**   Reimbursement payments under this Dependent Day Care Spending Account will be made directly to the Participant.  However, in the Daily Administrator's discretion, payments may be made directly to the service provider.   Expenses cannot be reimbursed from the Dependent Day Care Spending Account until they have been incurred.  Expenses are incurred when the care is provided and not when the Participant is formally billed for, charged for or pays for the care.

(e)    **Substantiation of Claims.**  All claims must be substantiated in accordance with this section or the terms of the Component Program Documents prior to payment or reimbursement of any Employment-Related Dependent Day Care Expenses. In general, all claims must be substantiated by information from a third-party that is independent of the Employee and his Dependents.  In addition, all claims must set forth:

(i)     the person(s) on whose behalf the Employment-Related Dependent Day Care Expense was incurred;

(ii)    the nature and date of the expenses so incurred;

(iii)   the amount of the requested reimbursement;

(iv)    the name of the person, organization or entity to whom the expense was or is to be paid and taxpayer identification number (Social Security number, if a person);

(v)     the relationship, if any, of the person performing the services for the Participant (if the services were performed by a child of the Participant, the age of the child);

(vi)    a statement that such expenses have not otherwise been reimbursed and that the Participant will not seek reimbursement through any other source;

(vii)   the Participant's certification that he has no reason to believe that the reimbursement requested, added to his other reimbursements to date for expenses incurred during the same calendar year, will exceed the applicable statutory limit for the Participant;

(viii)  a statement as to where the services were performed;

(ix)    if any of the services were performed outside the home, a statement as to whether the Qualifying Individual for whom the services were performed spends at least 8 hours a day in the Participant's household;

(x)     if the services were being performed in a day care center, a statement:

    (A)    That the day care center complies with all applicable laws and regulations of the state of residence; and

    (B)    That the day care center provides care for more than 6 individuals (other than individuals residing at the center).

(xi)    if the Participant is married, a statement containing the following:

    (A)    The Spouse's salary or wages if he or she is employed; or

    (B)    If the Participant's Spouse is not employed, that

    (C)    he or she is incapacitated; or

    (D)    he or she is a full-time student attending an educational institution and the months during the year which he or she attended such institution

(xii)   other such details about the expenses that may be requested by the Daily Administrator on the reimbursement request form or otherwise.

The application will be accompanied by those documents listed above from an independent third party, along with any other documentation that the Daily Administrator may request.  There can be no self-substantiation of an expense by a Participant (*i.e.*, cancelled checks to a babysitter are not sufficient, standing alone).

**7.6    Statement of Benefits**

The Daily Administrator will periodically (but no later than January 31st of each year) furnish to each Employee who is a Participant in the Dependent Day Care Spending Account a statement of the contributions made to such Account and the benefits paid from such Account on or on behalf of such Participant during the Plan Year.

_____

End of Article VII

## ARTICLE VIII — HEALTH SAVINGS ACCOUNTS

8.1   **Establishment of Health Savings Account**

A Health Savings Account or HSA may be established by an HSA Eligible Participant, in his sole discretion, with an Approved HSA Vendor.  The terms of participation in the HSA (including, but not limited to, investments, account administration, and accepted rollovers) will be determined by such Approved HSA Vendor except, to the extent that such terms are not set forth by such Approved HSA Vendor or such terms do not comply with section 223 of the Code or other Internal Revenue Service guidance addressing health savings accounts, the terms of participation in the HSA will be governed by Code section 223 and such other Internal Revenue Service guidance.

8.2   **Contributions to Health Savings Account**

(a)   **Employee Contributions.**  An HSA Eligible Participant who has established an HSA with an Approved HSA Vendor may make contributions to such HSA on a pre-tax basis through the Cafeteria Program as set forth in Article IV.  Such contributions will be subject to any limitations set forth by the Approved HSA Vendor except, to the extent that such Approved HSA Vendor has failed to set forth any limitations on contributions or such limitations conflict with section 223 of the Code or other Internal Revenue Service guidance addressing health savings accounts, the terms of Code section 223 or such other Internal Revenue Service guidance will govern.

(b)   **Employer Contributions.**  The Employer may, but is not required to, make contributions through the Cafeteria Program to an HSA established with an Approved HSA Vendor by an HSA Eligible Participant.  Employer HSA contributions, if any, will only be deposited in an HSA maintained by an Approved HSA Vendor.  Such contributions will be subject to the nondiscrimination requirements of section 125 of the Code and any applicable limits on Employer Contributions set forth in section 223 of the Code or other Internal Revenue Service guidance.

8.3   **Distributions from Health Savings Account**

(a)   **Transfer or Rollover of HSA Balance to Non-Approved HSA Vendor.**  An HSA Eligible Participant may, at any time, transfer or rollover his or her HSA account balance to a vendor that is not an Approved HSA Vendor.  However, any Employee contributions made by or on behalf of an HSA Eligible Participant to a health savings account maintained by a vendor that is not an Approved HSA Vendor must be made on an after-tax basis by the HSA Eligible Participant, and may not be made pre-tax through the Cafeteria Program or through the Employer's payroll system.  Further, Employer HSA contributions, if any, will only be deposited in an HSA established with and maintained by an Approved HSA Vendor.

(b)   **Other Distributions or Rollovers. (Including Rollovers to Approved HSA Vendors).**   Distributions and rollovers (other than a rollover described in Paragraph (a) above) from an HSA established by an HSA Eligible Participant will be governed by section 223 of the Code, applicable Internal Revenue Service guidance, and the Approved HSA Vendor (to the extent that any limitations or

requirements established by the Approved HSA Vendor do not conflict with section 223 of the Code or other applicable Internal Revenue Service guidance). Taxation of such distributions and/or rollovers will be determined under Code section 223 and other applicable Internal Revenue Service guidance. Each HSA Eligible Participant has sole control and is exclusively responsible for expending HSA funds.

## 8.4     Responsibilities of HSA Eligible Participant

A health savings account is an individual account established by an HSA Eligible Participant with a vendor. Although HSA contributions made by or on behalf of an HSA Eligible Participant who has established an HSA with an Approved HSA Vendor may be made on a pre-tax basis through the Cafeteria Program, an HSA is not intended to be an "employee welfare benefit plan" within the meaning of ERISA, and is not a benefit program established or maintained by the Employer. Other than contributions made by the Employer or forwarded through its payroll department, the Employer will not monitor HSA contributions (including determinations as to whether such contributions exceed the statutory limits), investments of HSA account balances, or distributions or rollovers from the HSA. Such determinations and monitoring are the responsibility of the HSA Eligible Participant.

---

End of Article VIII

**ARTICLE IX — HEALTH REIMBURSEMENT ACCOUNT PROGRAM**

**9.1    Establishment of Plan**

This Article IX constitutes a separate plan document that sets forth the terms of the Health Reimbursement Account Program.  This Article IX is intended to qualify as a health reimbursement arrangement and a "health plan" under sections 105 and 106 of the Code and will be interpreted in a manner consistent with such Code sections and the Treasury regulations thereunder.  Eligible Employees who participate in this Health Reimbursement Account Program may submit claims for the reimbursement of certain Medical Expenses.  The only benefit provided under this Article IX will be reimbursement of allowable Medical Benefits; no cash or other benefits may be received under this Article IX.

**9.2    Definitions**

For purposes of this Article IX and the Plan, the terms below have the following meanings:

(a)     "**Medical Expense**" means any expense for medical care within the meaning of section 213 of the Code and the rulings and Treasury regulations thereunder, and not otherwise used by the Participant as a deduction in determining his tax liability under the Code.  However, a Participant may not be reimbursed for (i) the cost of other health coverage such as premiums paid under plans maintained by the employer of the Participant's Spouse or individual policies maintained by the Participant or his Spouse or Dependent, (ii) an over-the-counter medicine or drug (except for insulin) unless a prescription (as such term is defined in Internal Revenue Service Notice 2010-59 or subsequent guidance) has been obtained for the over-the-counter medicine or drug, or (iii) "qualified long-term care services" as defined in section 7702B(c) of the Code.  A Participant also may not be reimbursed for Medical Expenses incurred by a Domestic Partner of the Participant or a Child of the Domestic Partner if such individual is not the Participant's federal tax dependent within the meaning of section 152 of the Code (determined without regard to section 152(b)(1), (b)(2), and (d)(1)(B) of the Code).  Further, the Health Reimbursement Account Program will only allow reimbursements for certain Medical Expenses as described in the Component Program Documents for the Health Reimbursement Account Program.

(b)     "**Health Reimbursement Account**" means one of the funds established for Participants under this Article IX to which Employer contributions made on the Participants' behalf are allocated and from which allowable Medical Expenses may be reimbursed.

(c)     "**Health Reimbursement Account Program**" means the plan of benefits contained in this Article IX, which provides for the reimbursement of eligible Medical Expenses incurred by a Participant or his Dependents, except that Medical Expenses incurred by a Domestic Partner or a Child of a Domestic Partner who is not the Participant's federal tax dependent within the meaning of section 152 of the Code (determined without regard to sections 152(b)(1), (b)(2), and (d)(1)(B) of the Code), will not be eligible for reimbursement under this Health Reimbursement Account Program.